AIUTANA BANKGENOSSENSCHAFT *v.* ALPHONSE PERREN

SUPERIOR COURT FAIRFIELD COUNTY FILE No. 89089

Memorandum filed July 10, 1957

*Coles & O'Connell,* of Bridgeport, for the plaintiff.

*Isadore Mackler,* of Norwalk, for the defendant.

SHAPIRO, J. On January 15, 1952, the District Court of Zurich, Switzerland, is alleged to have rendered a judgment in favor of the plaintiff and against the defendant in the amount of 19,615 Swiss francs or about $5000. The plaintiff claims further that the defendant has not paid the same. This is denied by the defendant.

When the action was commenced in Switzerland, the defendant resided in and was domiciled in Greenwich, Connecticut, and was a citizen of the United States. He was not present in Switzerland at the time, nor did he have any property there. The Swiss action began and was continued by service made by registered notice sent from Zurich and addressed to the defendant at Greenwich, Connecticut. No other service was made on him except notice of the judgment. He did not appear in the Zurich court to defend that action, either in person or by attorney, and a default judgment was eventually rendered against him on January 15, 1952.

On January 23, 1953, this plaintiff brought suit in this court against this defendant to recover on the Swiss judgment. Service was made by leaving a

copy of the writ at the defendant's usual place of abode in Greenwich, and an appearance by counsel was entered for the defendant. At the trial here, the only witness to appear for the plaintiff was Attorney Paul L. Baeck of New York City. He testified as an expert in connection with the Zurich Civil Practice Act and related that the judgment obtained in Zurich by the plaintiff was in accordance with this law. Further, an affidavit signed by a New York attorney that this judgment was unpaid was offered. The affidavit was excluded on the grounds of being hearsay. At this point, the trial was suspended upon plaintiff's request in order to give plaintiff's counsel an opportunity to produce further evidence, if the plaintiff deemed it necessary. No further evidence was ever produced. There was no testimony in behalf of the defendant. Both counsel finally asked the court to determine the matter as it was presented. The questions raised here are whether or not the plaintiff sustained its burden of proof and whether the default judgment obtained in the Swiss court is valid and enforceable in this court.

One issue here is in regard to allegation of nonpayment made in paragraph 2 of the complaint. Section 102 of the Practice Book provides that the burden is on a defendant to plead payment as a special defense in order to have advantage of it. However, where the allegations of the complaint are such as really to put in issue on a general denial the fact of nonpayment as an element of the plaintiff's case—as here, where the plaintiff does make such an allegation which the defendant denies—and the issue so raised is tried, the plaintiff has voluntarily assumed the affirmative upon the issue. *Apuzzo* v. *Hoer,* 125 Conn. 196, 204. In the case at hand, the plaintiff proceeded in the same manner as above. In the face of this, the plaintiff now argues that it is nevertheless entitled to the benefit of the presumption of non-

payment. This claim is inconsistent with the *Apuzzo* case, supra, which is the law in Connecticut in spite of what other states may hold. It should be noted that here, as in the *Apuzzo* case, supra, the allegation of nonpayment in paragraph 2 of the complaint was simply denied by the defendant and the special defense set up by him deals with the questions of jurisdiction and the Statute of Limitations.

Another issue here is whether the default judgment obtained in the Swiss court is valid and enforceable in this court. Even though it is apparent that a judgment will have to be rendered for the defendant on this court's finding that the plaintiff has failed to sustain its burden of proof, yet this issue of the validity of the Swiss court's default judgment will be decided here.

The evidence disclosed that this defendant guaranteed payment of a note made in Switzerland which was defaulted by the maker and was referred to as a declaration of suretyship in exhibit F. On the bottom of this document appears language setting forth that it was agreed that the court of Zurich was a competent court and that Zurich was the place of jurisdiction. This language clearly shows that the defendant, by signing this note or declaration of surety, had before him this declaration as to court jurisdiction and that he appended his signature thereto. This note was defaulted and suit was started thereon in the District Court of Zurich. That court, pursuant to the civil code applying to it and the area of Switzerland under its jurisdiction, directed an order of notice of this suit to be mailed to the defendant at Greenwich, Connecticut. A return card (exhibit B) indicated notice of the suit and bore two signatures, "Dr. Alphons Perren" and "H. Perren." The court directed a further order of notice similar to the first order and this is indicated by exhibit C, which bore a return receipt similar to that

in the first notice. On January 15, 1952, the court for the district of Zurich entered a judgment by default in the total amount of 19,435.16 francs, which was equivalent to $4497.40. Notice of this judgment was sent by the court to Greenwich, Connecticut, and addressed to this defendant. A return card, pursuant to this notice (exhibit D), was returned to the Zurich court, bearing the signature "A. Perren." A further document (exhibit E) issued by the Zurich court indicated that no appeal was taken from its judgment of January 15, 1952, and that this judgment had become final. In this final judgment appears the following language: ". . . the competence of this Court exists because Zurich, as the place of jurisdiction, was stipulated between the parties in the surety document."

The defendant cites numerous cases regarding the question of jurisdiction of this Swiss court. The evidence indicates that the court had jurisdiction to hear matters involving the amount here concerned. The cases thus cited involve matters where there was no stipulation as to jurisdiction of a foreign court. Even in the case of *Pennoyer* v. *Neff*, 95 U.S. 714, 735, cited by the defendant, a leading case on the question of jurisdiction, the court clearly makes an exception to what might otherwise be a good defense to jurisdiction where it cites a case holding that where one agrees to a form of legal proceedings, he should be bound by a judgment arising therefrom.

The plaintiff also cited cases defending its claim that the Swiss court had jurisdiction. Of the many cited, this court can do no better than to cite at length an excerpt from *Gilbert* v. *Burnstine*, 255 N.Y. 348, 354, in which is set forth the following: "Defendants' agreement without reservation to arbitrate in London according to the English statute necessarily implied a submission to the procedure whereby that law is there enforced. Otherwise the

inference must be drawn that they never intended to abide by their pledge. They contracted that the machinery by which their arbitration might proceed would be foreign machinery operating from the foreign court. No other fair conclusion can be drawn from their language. . . . In order, therefore, to determine the issue asserted by defendants that jurisdiction never was acquired, the question must be decided whether their agreement to submit to that jurisdiction is contrary to our public policy.

"Generally, extraterritorial jurisdiction of alien tribunals, however vigorously asserted, is denied by us. Of its own force, process issued from the court of a foreign state against our citizen and served upon him here is void. Without his consent he cannot be made subject to it, but whenever he agrees to be bound by its service, his conduct presents a problem. Contracts made by mature men who are not wards of the court should, in the absence of potent objection, be enforced. Pretexts to evade them should not be sought. Few arguments can exist based on reason or justice or common morality which can be invoked for the interference with the compulsory performance of agreements which have been freely made. Courts should endeavor to keep the law at a grade at least as high as the standards of ordinary ethics. Unless individuals run foul of constitutions, statutes, decisions or the rules of public morality, why should they not be allowed to contract as they please? Our government is not so paternalistic as to prevent them. Unless their stipulations have a tendency to entangle national or state affairs, their contracts in advance to submit to the process of foreign tribunals partake of their strictly private business. Our courts are not interested except to the extent of preserving the right to prevent repudiation. In many instances problems not dissimilar from the one presented by this case have been solved. Vigor has

been infused into process otherwise impotent. Consent is the factor which imparts power. Text writers have discussed the subject and have concluded from the authorities that non-resident parties may in advance agree to submit to foreign jurisdiction. (Beale, The Jurisdiction of Courts over Foreigners, 26 Harvard Law Review, 193; Freeman on Judgments [5th ed.], vol. 3, p. 3053; Goodrich Conflict of Law, p. 141; Scott, Fundamentals of Procedure, pp. 39-41.) The last named author, speaking of non-residents, states: 'Jurisdiction over the person of the defendant may be acquired by his consent. This consent may be given either before or after action has been brought. Jurisdiction is conferred when the defendant enters a general appearance in an action, that is, an appearance for some purpose other than that of raising the objection of lack of jurisdiction over him. A stipulation waiving service has the same effect. The defendant may, before suit is brought, give a power of attorney to confess judgment or appoint an agent to accept service, or agree that service by any other method shall be sufficient. The defendant in all these cases has submitted to the control of the state and of the court over him.' These principles have long been announced by the courts. In *Pennoyer* v. *Neff* (95 U.S. 714, 735) the Supreme Court quoted with approval this language from *Vallee* v. *Dumergue* (4 Exch. 290): 'It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them.'" The Restatement of the Law of Conflict of Laws also holds that one of the grounds on which the exercise of jurisdiction by a state through its courts over an individual may be where he has consented to the exercise of jurisdiction. See §§ 77 and 81.

It is clear to this trier that this defendant, by his agreement, submitted himself to the personal jurisdiction of the Zurich court; that the process followed by that court leading to judgment was in full compliance with its practice and procedure. He is now bound by the adjudication of that court.

In conclusion, this court holds that the plaintiff has failed to prove nonpayment as alleged in its complaint. However, the judgment as obtained in the District Court of Zurich is valid and enforceable in Connecticut.

Judgment may enter accordingly.