## Millett's Executor, et al. v. Commonwealth.

### (Decided May 6, 1919.)

### Appeal from Bourbon Circuit Court.

1. Taxation — Place of Taxation — Non-Residence. — Evidence examined and held that P. J. Millett was a non-resident of the State of Kentucky on each of the taxing dates named in the pleadings.

2. Taxation—Domicile.—A man can have but one domicile although he may have several residences and in different states. Domicile consists of residence and intention.

3. Taxation—Domicile.—The taxable situs, under our statutes, of all intangible personal property is at the domicile only of the owner.

4. **Taxation—Domicile.**—The tangible personal property in this state of a non-resident is subject to taxation in the county and taxing district wherein it is situated.

5. **Taxation—Omitted Property.**—Where one lists his personal property but at an inadequate value, the court has no power in a proceeding by the revenue agent to assess omitted property, to re-assess such personalty or to increase the assessment to its reasonable value.

EMMETT M. DICKSON for appellants.

DAVID C. CLINE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

This appeal is from a judgment of the Bourbon circuit court rendered on an appeal from the Bourbon county court, finding Patrick J. Millett a resident of Bourbon county, and the owner of a large amount of intangible personal property and a smaller amount of tangible personal property, subject to taxation in that county. The chief defense interposed by the executor of Millett to the proceeding was the non-residency of Millett at the time of his death as well as at all times for which the suit seeks to hold his estate liable for taxes, and this question of fact is to be determined from the evidence of a great number of witnesses, presented by both sides. Millett died in October, 1916, in a hospital at Knoxville, Tennessee. On the 23rd of October, the Commonwealth, on relation of Talbott, sheriff, instituted the first action in the Bourbon county court against Mrs. Michael Griffin and others, heirs at law of Millett, to have certain stocks and bonds, life insurance and cash belonging to the estate of Millett assessed for taxation in Bourbon county for county and state purposes as of September 1, 1911, 1912, 1913, 1914, 1915 and 1916. On October 27th another action was commenced by the Commonwealth on relation of Walton M. Byars, revenue agent, against the same parties. Later on the Mechanics' Bank & Trust Company, of Knoxville, Tennessee, executor of the estate of Millett, was made party defendant, and these two actions by agreement were consolidated, prepared and heard together. The judgment in the Bourbon county court and that in the Bourbon circuit court are substantially the same, and in addition to finding Millett to be a resident of Bourbon county, Kentucky,

on the first day of September of each of the years named, it adjudged ''that defendant's testator, P. J. Millett, was on the first day of September of the years stated below, the owner of the personal property mentioned below, having a taxable situs in Bourbon county, Kentucky, that the said P. J. Millett and this defendant omitted to list and was not assessed with the same for state or county taxes, and that said property is liable to assessment, for the years and on the valuations herein set forth, and the same is hereby assessed, as follows, to-wit:

''Owned September 1st, 1912: now assessed for the year 1913, consisting of household furniture of the value of $400.00, cash in bank of the value of $26,816.00, thirty cattle of the value of $720.00—total, $27,936.00.

''Owned September 1st, 1913: now assessed for the year 1914, consisting of household furniture of the value of $400.00, agricultural implements of the value of $600.00, five horses and mares of the value of $1,000.00, two mules of the value of $200.00, twenty-five hogs of the value of $150.00, thirty cattle and cows of the value of $720.00, cash in bank of the value of $70,000.00—total, $73.070.00.

''Owned September 1st, 1914: now assessed for the year 1915, consisting of household furniture of the value of $400.00, agricultural implements of the value of $600.00, five horses and mares of the value of $1,000.00, forty cattle and cows of the value of $960.00, two mules of the value of $200.00, twenty-five hogs of the value of $125.00, cash in bank of the value of $61,133.00—total, $64,418.00.

''Owned September 1st, 1915: assessed for the year 1916, consisting of household furniture of the value of $400.00, agricultural implements of the value of $600.00, five horses and mares of the value of $1,000.00, seventy cattle and cows of the value of $2,100.00, two mules of the value of $200.00, twenty-five hogs of the value of $125.00, one judgment against D. J. McDonald of the value of $2,500.00, cash in bank of the value of $34,459.00—total, $41,384.00.

''Owned September 1st, 1916: assessed for the year 1917, consisting of the following property, to-wit: household furniture of the value of $400.00, agricultural implements of the value of $600.00, five horses and mares of the value of $1,000.00, twenty-six heifers, steers and

calves of the value of $500.00, two mules of the value of $200.00, one judgment against D. J. McDonald of the value of $2,500.00, seven sows and pigs of the value of $200.00, cash in bank of the value of $19,908.00—total, $25,308.00.''

The determination of the taxable situs of the intangible personal property belonging to the estate of Millett depends primarily upon the facts to be ascertained from the great volume of evidence introduced. From this testimony we learn that Millett was born in Ireland and emigrated to this country in the 70's when he was about thirteen years of age; he took up his residence with his uncle in Knoxville, Tennessee, where he attended school and made acquaintances of a number of men who afterwards became his business associates. He first obtained a job as driver of a cart in Knoxville; later he drove a cart in construction work, on the Cincinnati Southern Railroad; he was then about twenty-one or twenty-two years of age. In the meantime he had established a home for his mother, sisters and brothers in the city of Knoxville, and lived with them. He soon drifted into the work of construction contractor and was engaged largely in railroad work, out of which he made large sums of money. About the year 1898 he obtained a contract on the Kentucky Midland Railroad which brought him to Paris, Kentucky. The work proved profitable. About the same time he collected a large policy of insurance which had matured. He liked Paris and Bourbon county and decided to buy a farm. Accordingly, in 1901, he bought a farm of 328 acres, paying therefor $31,000.00. For the first two or three years he leased the farm; later on he took personal possession of it and made improvements on the house and other buildings on the place. He built a porch or veranda to the house, which was a large brick structure and put in a steam heating plant with running water and bath. He furnished the house throughout elegantly and kept his lawn in beautiful condition. He spent much of his time at this farm when not engaged on contracts; occasionally he went to Knoxville, but did not remain there long at a time. He stocked the farm first with race horses and thoroughbred stock; later on he went into the cattle business and raised some hogs; finally he began to farm the land, raised corn, wheat and tobacco. A number of witnesses testify that

Millett referred to the farm as "home," and when speaking of going to the farm he would say "I am going home," or words to that effect. Millett was never married. His mother died some four or five years before Millett. After her death Millett rarely went to Knoxville, though he continued to own the home which he had purchased several years before and in which his mother lived until her death, and in which other members of the family continued to reside. In this home one room was reserved for Millett himself from its purchase down to the time of his death. He furnished it to suit himself and no one else occupied it, and it was called "Pat's room" by the family. In this room he kept his clothing, trunks, personal belongings and such like.

Millett, while remaining much at the farm in Bourbon county, never claimed his citizenship there and would not vote in Bourbon county, although solicited so to do. On such occasions he would say that his home was in Knoxville, but Millett did not even vote in Knoxville. Just why is not made certain, although appellee insists that Millett, being a professional tax-dodger, refrained from voting in order to avoid taxation. He was not assessed for poll tax either in Knoxville, Tennessee, or Bourbon county, Kentucky, and in fact paid very little taxes in either place, especially Knoxville, where his tax bill amounted to about $25.00 per year. In Bourbon county he listed his farm of 328 acres at about $24,000.00, and occasionally he listed some personal property, but by no means all that he owned in Bourbon county. His list always appeared among the non-resident property owners on the Bourbon county books.

In 1910, or 1912, Millett constructed a large silo on the farm and supplied the farm with sufficient implements for its cultivation. He kept a considerable sum of money on deposit in the Deposit Bank of Paris, Kentucky, and he also kept an account in a Knoxville bank.

On the other hand it is shown that Millett always registered at hotels as "P. J. Millett, Knoxville, Tenn." He made two wills, each one of them beginning, "I, P. J. Millett, of the city of Knoxville, county of Knox, Tennessee," Many of his former neighbors in Knoxville testify that Millett always claimed Knoxville as his home and that he was frequently in that city, used the family home as his home; that he took interest in elections and public affairs in Knoxville, although he did not

vote, except in 1884; that he had his church connections in Knoxville and belonged to the Elks' Lodge there, and while often solicited to change his membership to the lodge at Paris, Kentucky, declined to do so. Some years before his death he purchased a lot in the Catholic Cemetery in Knoxville, upon which he had erected a large stone monument on which was inscribed, in large raised letters, the name "Millett." In this lot were buried his mother, sister and nephew before Millett's death, and his body now rests there. There are many other circumstances developed in the evidence tending to show that Millett regarded Knoxville as his domicile, and to which he intended finally to return.

One may have more than one residence but he can have but one domicile or home. The place where one is born is his domicile until he establishes another one by choice, and when once a domicile is established by choice it continues indefinitely until he establishes a new one, which may be done by residence and intention. Under our statute, sec. 4020, all intangible personal property has a situs for the purposes of taxation at the domicile only of the owner. Tangible personal property situated in this state, though owned by a non-resident, is subject to taxation in the county wherein situated. Although one may have and maintain a residence in this state, yet his intangible personal property is not subject to taxation here if his domicile be elsewhere; but the rule is different as to tangible personal property. The question of the location of the domicile of the property owner is, therefore, an important one and often, as in this case, very difficult of determination. While there is considerable evidence tending to show that Millett regarded his farm in Bourbon county, Kentucky, as his home, and to which, when absent, he always expected to return, we are constrained to the opinion that the great weight of the evidence is to the effect that Millett regarded and held Knoxville as his domicile. In the case of Boyd's Executor v. Commonwealth, 149 Ky. 767, this court, in discussing the question of legal residence, says:

"There is a broad distinction between a legal and actual residence. A legal residence (domicile) can not, in the nature of things, co-exist in the same person in two states or countries. He must have a legal residence somewhere. He can not be a cosmopolitan. The succes-

sion to movable property, whether testamentary or in case of intestacy, except as regulated by statute; the jurisdiction of the probate of wills; the right to vote; the liability to poll-tax, and to military duty, and other things, all depend upon the party's legal residence or domicile. For these purposes he must have a legal residence. The law will, from facts and circumstances, fix a legal residence for him, unless he voluntarily fixes it himself. His legal residence consists of fact and intention; both must concur; and when his legal residence is once fixed, it requires both fact and intention to change it."

Continuing the opinion says:

"A removal which does not contemplate an absence from the former domicile for an indefinite and uncertain time is not a change of it. But when there is a removal, unless it can be shown or inferred from circumstances that it was for some particular purpose, expected to be only of a temporary nature, or in the exercise of some particular profession, office or calling, it does change the domicile. The result is, that the place of residence is *prima facie* the domicile, unless there be some motive for that residence not inconsistent with a clearly established intention to retain a permanent residence in another place."

Measured by this rule, we are persuaded that the situs for the purpose of taxation of the intangible personal property belonging to the estate of Millett on the dates named in the pleadings in this case was not in Bourbon county, Kentucky, and the court erred to the prejudice of appellant in so holding.

Bear in mind Millett's name always appeared on the non-resident list on the assessor's books of Bourbon county, and he was not listed there for poll tax. For the year 1912 he listed a farm of 329 acres, at $23,600.00, but he listed no personal property whatever. At that time, according to Mr. Redman, who was in charge of the farm, Millett owned and had on said farm a large amount of household furniture, farming implements, cattle, hogs and several head of horses. For the year 1913 he listed his farm at $24,800.00; he also listed 10 thoroughbred saddle and standard mares and colts at $500.00; two mules at $150.00; hogs at $75.00; agricultural implements $200.00; wagons, carriages and automobiles $50.00,

and under the head of bulls, cows, calves and steers, one valued at $25.00. From the evidence of Mr. Talbott we learn that Millett then had on his said farm a considerable number of cattle. He listed only one. He did not list his household and kitchen furniture or other items. While we do not hold that the trial court would have been warranted in fixing a greater value on the 10 thoroughbred horses, colts and mares than $500.00 fixed by Millett, we have no doubt of the correctness of the rule by which all the bulls, cows, calves and steers above the one listed by Millett was listed. In other words, this was omitted property, so also was his household and kitchen furniture. But where Millett undertook to and did list his tangible personal property, though he fixed an under valuation, the court was powerless at that time to make a different assessment. As there was no personal property whatever listed by Millett in Bourbon county for the years 1912, 1914, 1915 and 1916, the trial court properly listed and assessed said property for taxation; and as Millett omitted to list certain of his personal property for the year 1913, the court did not err in assessing this also, but it should not have attempted to reassess property. The value fixed by the court on the omitted tangible personal property for the year 1912 is $1,120.00; 1913, $3,070.00; 1914, $3,285.00; 1915, $6,925.00; 1916, $9,400.00, and we perceive no substantial error therein.

Whereupon the judgment, in so far as it lists for taxation and assesses the tangible personal property for all the years except 1913, is affirmed, but reversed for further proceedings in that part wherein it fixes Millett's domicile in Bourbon county, Kentucky, and lists and assesses for taxation in Bourbon county, Kentucky, his intangible personal property, and attempts to reassess tangible property for 1913.

Judgment affirmed in part and reversed in part.