## Pettit's Executrix v. City of Lexington, et al.

(Decided February 10, 1922.)

### Appeal from Fayette Circuit Court.

1. Domicile—Question of Fact and Intention.—The question of legal residence is one of fact and intention. The residence need not be continuous or for the greater part of the time, but there must be an abiding place with an intention of constituting a legal residence before it can be fixed as such.

2. Domicile—Intention.—The fact of a legal residence cannot be inferred from an intention however expressed. But the intention may be inferred from the fact in the face of a contrarily expressed purpose.

3.  Domicile—Evidence—Finding of Chancellor.—Evidence examined
    and held to warrant the finding that for the years 1911 to 1914
    inclusive, the testator was legally domiciled in Lexington, Ken-
    tucky.

4.  Taxation—Omitted Property.—In a suit of a city of the second
    class to collect back taxes the allegation that "other notes" were
    omitted from assessment is sufficiently definite under section 3187
    of Kentucky Statutes, the Act of March 18, 1912, being inappli-
    cable as it relates solely to revenue agents and sheriffs.

5.  Taxation—Omitted Property—Pleading.— The motion to make
    more definite a petition alleging that "other notes" were omitted
    from assessment should not have been sustained, in the absence of
    a showing on the part of the defendant that she could not obtain
    the information which she sought to compel the plaintiff to fur-
    nish or that it was necessary to enable her to defend the suit.

6.  Appeal and Error—Cross Appeal—A cross appeal is not allowable
    under section 755 of the Civil Code from a judgment on a distinct
    cause of action, stated in a separate paragraph from other causes
    of action included in the petition from the judgment on which the
    original appeal is prosecuted.

HUNT, NORTHCUTT & BUSH and FALCONER & FALCONER
for appellant.

FORMAN & FORMAN and D. C. HUNTER for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming
on original appeal and reversing on cross appeal.

This is an appeal from a judgment of the Fayette
circuit court assessing personal property for city taxes
against William Pettit, for the years 1911, 1912, 1913 and
1914, and assessing similar property for city
taxes against Annie V. Pettit, executrix of Wil-
liam Pettit, for the years 1915 and 1916. A
cross appeal is prosecuted from the order entered
in that court, dismissing the petition as to "other
notes" alleged to have belonged to William Pettit and
sought to be assessed for taxes for the years 1911 and
1912. There is also a motion to be allowed a cross appeal
from the order dismissing so much of the petition as
sought to assess personal property against William Pet-
tit for city taxes, for the years 1908, 1909 and 1910. This
motion is opposed by appellant.

The pleadings and motions relating to this contro-
versy are voluminous. Reference to their contents is
unnecessary for the reason that on the original appeal
there is involved the single question of whether William
Pettit was legally domiciled in Lexington on the assess-

ing dates for the taxing years of 1911 to 1914 inclusive; in addition to which there is to be determined the place of his legal residence at the time of his death, which is decisive of whether his executrix, Annie V. Pettit, is liable for taxes for the years 1915 and 1916, inasmuch as it is conceded that if he was legally domiciled in Lexington at his death, occurring July 22, 1914, his property for the years 1915 and 1916 is subject to assessment for city taxes as against his executrix.

Counsel for the parties on this appeal have elaborately discussed the authorities considered applicable to the question of legal residence. Boyd's Exor. v. Commonwealth, 149 Ky. 764; Graves' Admr. v. City of Georgetown, 154 Ky. 207; City of Winchester v. Van-Meter, 158 Ky. 31; Saunders v. City of Flemingsburg, 163 Ky. 680; Hurst v. City of Flemingsburg, 172 Ky. 127; City of Covington v. Shinkle, 175 Ky. 530; Millett's Exor. v. Commonwealth, 184 Ky. 193, and many other earlier decisions are cited as applying to the questions of fact to be determined here, which are whether or not William Pettit was, on the assessing dates for the years in question and at the time of his death, legally domiciled in Lexington, Kentucky.

The principle announced in all of these cases is the same, and whatever discrepancies may seem to exist, arise, not because of a departure from the principle of law, but, on account of the different facts to which it is applied. It is apparent, therefore, that a comparative analysis of the cases relied on could offer no controlling analogy. Undoubtedly, there is a broad distinction between a legal residence and an actual residence, and it is equally well settled that the motives for establishing and maintaining the former are not subject to inquiry in a proceeding of this kind, as the location is fixed without regard to the motives inducing the selection. The question of legal residence is one of fact and intention. The foundational fact of residence conjoined with the intention fixes the legal residence. But the fact is more powerful than the intention, for intention may be inferred from the fact alone, whereas the fact cannot be shown by or inferred from intention. The residence need not be continuous or for the greater part of the time, but there must be an abiding place joined with an intention of constituting a legal residence before it can be fixed as such.

It is also true that every person must have such a residence, and that he can have but one, and that when once established it continues until he renounces it and acquires another.

A discursive examination of the evidence here would not elucidate the conclusions reached. Briefly stated the record shows that William Pettit, who had previously been married and was without living children, was married to Annette VanMeter, his surviving wife, in 1895. In March of 1896 he purchased and caused to be conveyed to his wife a two story brick residence referred to in the record as 801 East Main street.

In 1897 Mr. Pettit purchased a farm on the Richmond pike, known as the Tod Hunter place, but he and his family continued to reside at 801 East Main street. In the summer of 1906 the limits of the city of Lexington were extended to include the place where he resided, and that autumn he purchased and moved to a cottage on a small farm outside the city limits. In January, 1907, he returned to 801 East Main street, where he and his family resided the major part of the remainder of his life. Mrs. Pettit says that it was not their intention to make the cottage to which they moved in 1906 their permanent residence. The question then is whether the legal residence of William Pettit was at 801 East Main street or, as appellant's evidence tended to show, at the Tod Hunter place.

The Tod Hunter farm was acquired some time after the purchase of the Main street property, and it appears that Mr. Pettit purchased other property adjoining the Main street property; that he and his family spent the greater part of each year in that property; that he maintained his valuable household furniture there; that the family were members of and attended churches at Lexington; that he had a garden at 801 East Main street and cultivated it; that his childrn were born there; he kept his carriage and automobile at that place; there was a cottage on the place for servants; and that Mrs. Pettit has lived there almost continuously since her husband's death.

On the other hand, it is shown in the evidence that in leasing the Tod Hunter place about March 1, 1907, Pettit reserved a part of the farm and two rooms in the brick residence on it, and that subsequent leases contained similar reservations in the house. The rooms

were rather scantily furnished but it is shown that he spent part of every summer thereafter at the place, and that usually his family or some of them accompanied him; that he generally, if not always, took his meals while there with the man occupying the residence, and while he rented the farm for some of those years at other times he had an interest in the crops. It is also shown that he never registered as a voter in Lexington; that he frequently stated that he resided in the county; and that he paid $25.00 a year for part of the time as tuition to the city of Lexington for his sons who attended the city schools. While he never registered as a voter in Lexington, there was some testimony tending to show that he voted in a school election. On this point, however, there is conflict as to the time, it being stated by one witness that the election was held previously to the extension of the city limits in 1906. There was also testimony to the effect that after 1907 he voted on one or two occasions in the country, in the precinct in which the Tod Hunter place was located.

Copies of deeds and other documents were placed in evidence, in some of which Mr. Pettit referred to himself as a resident of Fayette county and in others he was referred to as a resident of Lexington.

The location of one's legal residence is, as we have seen, a question of fact and intention, and the fact as exhibited and the intention as inferred or expressed must coincide in the conclusion. It should also be noted that neither of these elements can exercise a controlling effect, though intention may arise from the established fact; as where one's conduct conclusively shows his residence to be in one place, his expressed intention that it shall be in another may not override the fact so as to locate it there. The intention in that case will be inferred from residence alone in the face of contrary expressions of purpose.

Adhering to these general rules the legal residence of Pettit must be ascertained. The logical starting point is found in the fact that, prior to the extension of the city limits in 1906, his legal residence was at the place known in the record as 801 East Main street. He had voted from that place and had resided there continuously since 1896. When the city limits were extended he purchased and moved to the small cottage, outside the city boundary. But he did not intend, as shown by the testimony of Mrs.

Pettit, to make that place his legal residence. His residence, therefore, remained at 801 East Main street and later he returned to make it his actual residence. The question then is, did he renounce his legal residence at that place or transfer it to the Tod Hunter place?

This inquiry is to be answered by his actual residence thereafter, his method of conducting his business, his manner of living and his intention as properly inferable from the facts and circumstances in evidence and as expressed by himself. It may be admitted that after 1896 he never registered or voted in Lexington and that he did exercise the right of suffrage in the precinct in which the Tod Hunter place was located; also that generally he spent a part of each summer at the latter place. These circumstances, however, only show that he attempted to evidence an intention to renounce his legal residence at 801 East Main street and to establish one at the Tod Hunter place. But are they sufficient to show a genuine intention of that kind? We think not, in view of the fact that he continued to live at 801 East Main street practically all the time, and to maintain a home there, accepting such benefits of city citizenship as he chose, receiving his mail at that place, and doing all those things that one does where his permanent home is located.

The spending of a short time each summer in the country under conditions less comfortable than those under which he lived in the city, the voting from the Tod Hunter place, a few times, and the refraining from registering and voting in Lexington were all acts performed by him with the view of manifesting what he doubtless conceived to be conclusive evidence of the establishment and maintenance of a residence at the Tod Hunter place. But those acts in our opinion are not sufficient evidence of the intention to overcome that to be inferred from the fact of his actual residence at 801 East Main street and his doing of those things at that place that one usually and normally does in establishing and maintaining a home and legal residence. Moreover, the acts relied on are not sufficiently joined to the fact of residence to authorize the conclusion that he succeeded in transferring his legal domicile to the Tod Hunter place. We conclude, therefore, that for the years in question he was legally domiciled in the city of Lexington.

The judgment is complained of, on cross appeal, because it excludes taxes for the years 1911 and 1912 on

"other notes," alleged to have been omitted from assessment. As to this feature, it was apparently based on the ground of deficient description of the notes in the petition, or failure to comply with the requirements of the revenue act of March 15, 1906, as amended by the act of March 18, 1912. Appellee maintains that the procedure in this action is regulated by section 3187 of Kentucky Statues, wherein it is provided that in any such action it "shall be sufficient to allege and prove the description and value of the property."

Section 3187 of Kentucky Statutes relates to municipal corporations of the second class and provides for the assessment of omitted property for city taxes. The act of March 18, 1912, applies to revenue agents and sheriffs and does not relate to a suit on behalf of a city of the second class for the collection of back taxes. Being inapplicable, the question must be decided on the language of section 3187, Kentucky Statutes. There is no judicial definition of an adequate description within the meaning of that section, but similar language, in another statute, has been construed in Commonwealth, By, etc. v. Riley's Curators, 24 Ky. Law Rep. 2005, and other cases. Descriptions no more definite than that adopted by the city in this suit were there held to be sufficient. Hence it was error to dismiss the petition as to "other notes," on the ground of indefiniteness of description.

This conclusion is unaffected by the suggestion that William Pettit being dead, his executrix was not presumed to know of what the other notes consisted and for that reason the motion should have prevailed. There was, however, no showing that the executrix did not possess or could not obtain the information which she sought to compel appellee to set out in the petition or that it was essential to her ability to defend the suit. In the absence of such a showing it was not proper to require appellee to make its petition more specific as to these items.

The motion for a cross appeal under section 755 of the Civil Code from the judgment entered February 17, 1917, dismissing so much of the petition as sought to assess against William Pettit personalty for taxes for the years 1908, 1909 and 1910, respectively, raises the question as to whether the judgment was a final or an interlocutory order. Section 113, subsection 2 of the Civil Code provides that "a pleading may contain statements of as many causes of action, legal or equitable, total or partial;

and may make as many traverses; and may present as many causes of action, legal or equitable, or of as many matters of estoppel and avoidance, legal or equitable, total or partial; and may make as many traverses; and may present as many demurrers as there may be grounds for in behalf of the pleader," and subsection 3 that if there be more than one each must be distinctly stated in a separately numbered paragraph.

It was eminently proper for appellee to join in one suit all the causes of action that it had against William Pettit for failure to assess personalty for taxation in Lexington. This was done, but the failure for each taxable year constituted in itself a cause of action, uncontrolled by decedent's delinquency with reference to other years and the question of his liability for taxes for such years. It follows that the failure to list his personalty for taxes for any one of the three years in question constituted an independent cause of action against him, which was properly joined in the suit for other years in which there was a failure, but each year was necessarily determinable on the facts pertaining to it, such as that of the place of his legal residence on the assessing date for that year, and, if it was Lexington, the amount and value of his taxable property.

A demurrer was sustained to that part of the petition that sought to assess Pettit's property for the years in question, and appellee failed and refused to amend its petition. Thereupon the petition was dismissed as to those years. That judgment was a final adjudication by the trial court of the claims for those years and it is not a part of the judgment attacked by appellant on this appeal. The city had the right to stand on the allegations of those paragraphs of the petition and to decline to amend them, but having done so the judgment dismissing them was a final order, not embraced in or a part of the judgment appealed from by appellant. The motion for a cross appeal as to this ruling is not allowable under section 755 of the Civil Code. (Randolph v. Snider, 139 Ky. 159; West v. King, 163 Ky. 561; Brown v. VanCleave, 86 Ky. 381.)

The views advanced in this connection are not in conflict with Elizabethtown L. & B. S. R. R. Co. v. Catlettsburg Water Co., 110 Ky. 175, and Marion County v. Spaulding, 143 Ky. 289. Those cases relate to a cross appeal from the judgment on which the original appeal

was prosecuted, and not to a separate judgment involving an entirely different cause of action, properly joined with other causes of action in a single suit. The motion for an appeal from the judgment of February 17, 1917, is overruled.

Wherefore, the motion for an appeal from the judgment of February 17, 1917, is overruled; the judgment on the original appeal is affirmed, and on the cross appeal as to the years 1911 and 1912 is reversed for proceedings consistent with this opinion.