Argued August 24, affirmed October 27, petition for rehearing
denied November 22, 1972, petition for review
denied January 23, 1973

# WEST ET AL, *Petitioners, v.* BOWERS, *Respondent.*

502 P2d 270

*James C. Tait,* Oregon City, argued the cause for petitioners. With him on the brief were John C. Cald-

well and Hibbard, Caldwell, Canning & Schultz, Oregon City.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

SCHWAB, C. J.

Petitioner, an Oregon State University student, seeks review of a decision of the Oregon State University Residency Classification Officer denying her request that her classification be changed from nonresident to resident for purposes of computing the tuition she was to pay.

The tuition and fees schedules for Oregon's public colleges and universities provide that students who are residents of Oregon pay lower rates than students who are not residents of Oregon. The terms, "resident student," and "nonresident student," are defined in Administrative Rules[1] of the State Board of Higher Education, which has general authority over Oregon's public colleges and universities, ORS 351.060; *see, generally,* ORS ch 351 and ORS ch 352. The rules prescribe standards to be used in determining the residence of entering students. The rules further provide standards to be used and procedures to be followed when students claim that their status has changed, e.g., from nonresident to resident.

---

[1] Following the terminology of the Administrative Rules, we use the terms "resident" and "nonresident" in this opinion. However, technically it appears that these terms should be "domiciliary" and "nondomiciliary."

Petitioner challenges these Administrative Rules on constitutional grounds. Alternatively, petitioner contends the denial of her requested change to resident status is not supported by the evidence.

Under the Administrative Rules, the residence classification of a student is first determined when he enters an Oregon college or university. Stated briefly and generally, a student is classified as resident if he is emancipated[2] and domiciled in Oregon, or is unemancipated and his parents are domiciled in Oregon. Conversely, a student is classified as nonresident if he is emancipated and is domiciled outside Oregon, or is unemancipated and his parents are domiciled outside Oregon.

It is apparent that the principal question to be determined in applying these rules is the state of a student's domicile or his family's domicile. *See,* n 1, supra. The rules provide standards for this determination:

"A student's parent or legal guardian, or an unemancipated student, will be deemed to have established an Oregon domicile if he establishes and maintains a bona fide fixed and permanent residence in Oregon, with no intention of changing such residence to a place outside the State of Oregon when the school period expires. Factors that will be considered in determining if an Oregon domicile has been established are: abandonment of previous domicile, rental or purchase of a home, presence of family, presence of household goods, length of time in state, nature and permanence of employment, sources of financial support, ownership of

[2] At the times material to this case the regulations defined an emancipated student as:

"* * * [O]ne who is over the age of 21 or, if under the age of 21, is married or has a domicile independent of that of his parent or legal guardian * * *." AR 30.110 (2).

property, place of voting, and payment of Oregon personal income taxes." AR 30.125(1).

The Administrative Rules further provide that a student's classification can be changed from non-resident to resident, or from resident to nonresident while attending an Oregon college or university. For example, in the case of an unemancipated student this could happen if his parents moved to Oregon (classification then changed to resident), or moved out of Oregon (classification then changed to nonresident). The same standards used to make the initial determination of domicile are used to evaluate whether there has been a change of domicile.

Petitioner was reared in Whittier, California, where she attended high school, graduating in 1968. During the 1968-69 and 1969-70 academic years she attended a junior college in Whittier, California. She moved to Oregon and began attending Oregon State University at the beginning of the 1970-71 academic year. Based on the information she supplied Oregon State University, she was then classified as a non-resident student, presumably based on a determination that she was an unemancipated student with the domicile of her parents, i.e., California. This first classification is not here questioned.

After completing one year at Oregon State University, during the summer of 1971 she applied for reclassification as a resident student. University officials asked her to fill out a "Residence Information Affidavit," which is a form used in the Oregon higher education system in passing on residency reclassification requests. Petitioner refused to complete the form. About October 21, 1971, university officials denied the request for change of classification to resident student.

Petitioner then requested and, on December 8, 1971, was granted, notwithstanding her failure to file the affidavit, a hearing before the Oregon State University Residency Classification Officer. The following evidence was presented at the hearing. Petitioner has lived in Oregon continuously since entering Oregon State University in the fall of 1970. The record is not clear exactly where she has lived since moving to Oregon. There is some indication that petitioner has been living with her uncle, a resident of Oregon City; in any event, petitioner had listed her uncle's address as her own, and Oregon State University sent mail to her at that address.[3] In March 1971, petitioner obtained an Oregon driver's license, on which her address was stated to be her uncle's Oregon City residence. Her uncle testified that petitioner's car was registered in Oregon. In July 1971, petitioner registered to vote in Oregon City, again listing her uncle's address as her own.

◼ At the time of the hearing petitioner's parents were living in California, but were about to move to North Carolina. In May 1971, petitioner's uncle was appointed her guardian. Her parents continued to provide all financial support for petitioner.[4]

The Oregon State University Residency Classification Officer ruled that petitioner had not estab-

---

[3] However, petitioner's brief states:

"* * * Petitioner visited the home of her * * * [uncle] in Oregon City on weekends and vacations and kept personal belongings there * * *."

[4] Petitioner claims it was error for the hearing officer to admit or rely on evidence concerning the source of her financial support. We hold this evidence was admissible and relevant in determining the question of whether petitioner was emancipated or not, i.e., whether she had established a domicile separate from that of her parents. See, n 2, supra.

lished she was entitled to her requested change to resident status in an opinion that concluded:

"1. A major factor in creating the guardianship was to avoid non-resident fees and tuition. While it was stated that this was not the primary purpose, there was no other bona fide purpose offered * * *. To hold that any legally created guardianship, regardless of its purpose, is automatically sufficient to establish residency for tuition purposes would completely destroy a valid distinction between resident and non-resident students.

"2. The letters addressed to the parents of Ms. West and sent to * * * [her uncle's] Oregon City address are not an admission that OSU has recognized her as a resident. This mailing address is given by each student to OSU during registration at the beginning of each term. Such address is not challenged or questioned and is only used for mailing purposes.

"3. Ms. West is registered to vote in Oregon and a certain amount of weight is given to this fact * * *.

"* * * Administrative Rule 30.125 provides that place of voting is one of many factors to be considered when determining residence, but standing alone, the fact that Ms. West is registered to vote in Oregon is not sufficient.

"4. The fact that Ms. West has an Oregon driver's license is given little weight. Any student, non-student, resident or non-resident can obtain an Oregon driver's license.

"5. Of considerable importance in determining whether the guardianship was bona fide for the purpose of determining residence was the fact that Ms. West still receives her financial support from her parents and not her guardian. It is extremely difficult to consider the guardianship a bona fide relationship for tuition and fee purposes since Ms. West is still supported by her parents who are not

presently, nor have they ever been, residents of the State of Oregon."

Petitioner's brief cites the Commerce Clause of and the Fourteenth Amendment to the United States Constitution. Her brief leaves us somewhat uncertain as to the precise thrust of these arguments.

■ ■ If it is petitioner's position that it is unconstitutional to charge nonresident students higher tuition rates, we reject that contention as meritless. It is common knowledge that Oregon's public institutions of higher education are supported by tax revenues paid by the citizens of Oregon. For the 1971-73 biennium the appropriation of public revenue to Oregon's colleges and universities was about $170,000,000. Oregon Laws 1971, ch 708, Sec 1, p 1593; Oregon Laws 1971, ch 709, Sec 2, p 1598. The families of resident students have, of course, contributed to this amount through the payment of Oregon taxes. The families of nonresident students, including petitioner's family, presumably have not paid Oregon taxes and thus not contributed to the operation of Oregon's publicly-financed colleges and universities. This is a reasonable basis upon which to distinguish between resident and nonresident students, charging the latter a higher tuition rate. *Johns v. Redeker,* 406 F2d 878 (8th Cir 1969); *Clarke v. Redeker,* 259 F Supp 117 (SD Iowa 1966).

■ If, instead, petitioner's constitutional attack is directed at the definitions in the Administrative Rules of "resident student" and "nonresident student," we also hold that contention has no merit. These rules have been established by the State Board of Higher Education pursuant to broad grants of authority from the legislature. *See,* ORS ch 351 and ORS ch 352. While, as petitioner contends, relying on 1 Restatement (Second) Conflict of Laws, Domicil §§ 18, 20

and 22 (1971), these rules may define domicile differently than does the common law, this does not make them unconstitutional. We can perceive nothing unconstitutional or unreasonable in the Administrative Rules, and if petitioner argues to the contrary we find it impossible to understand the basis of the argument.

Petitioner's final constitutional challenge appears to be directed at provisions of the Administrative Rules that required her to bear the burden of proving facts that would justify a change in classification from nonresident to resident:

> "Residence, once established, is presumed to continue until such time as sufficient evidence is provided to refute the presumption * * *." AR 30.120 (5).

> "If an institution's records show that the domicile of a student's legal custodian, or of an emancipated student, is outside of Oregon, such student shall continue to be classified as a nonresident thereafter until entitlement to classification as a resident is shown, and the burden of proof will be upon the student to show that his classification should be changed." AR 30.125 (3).

██ Again, it is difficult to follow the reasoning that leads petitioner to the conclusion that these rules are unconstitutional. Petitioner has cited no cases that hold the assignment of the burden of proof to one party or another in administrative proceedings to be unconstitutional. Moreover, the assignment of the burden to students requesting a classification change appears to be reasonable; the relevant evidence of change of domicile would normally be in the possession of the student.[9]

---

[9] Petitioner also argues a provision of the Administrative Rules that creates, in certain circumstances, a durational resi-

■■ Petitioner's alternative contention is that she sustained her burden of proving a change of domicile to Oregon. Our review of this factual matter is limited to whether the decision adverse to petitioner is supported by substantial evidence. ORS 183.480 (7)(d). We hold it is.

■ In determining domicile, the ultimate question is one of intent. AR 30.125 (1), supra; *cf., Reed's Will,* 48 Or 500, 509, 87 P 763, 9 LRA (ns) 1159 (1906):

"<sup>*</sup> * * Residence in a particular place is a fact obvious to the senses and cannot be easily mistaken, but its value in fixing domicile is unimportant unless accompanied with an intent of remaining permanently or indefinitely, or, as it is sometimes said, with no present intent of removing therefrom * * *."

The "Residency Information Affidavit," referred to above, specifically solicits a statement of intent:

"If you plan to live and practice your profession in the State of Oregon after graduation, summarize your future plans. Present any additional pertinent facts indicating intent to make Oregon a bona fide permanent domicile and to abandon any previous domicile other than Oregon * * *."

As previously noted, petitioner refused to execute this

---

dency requirement of six months, AR 30.120 (4), is unconstitutional. Since petitioner had been in Oregon for more than six months when she asked to be reclassified as a resident, and since her request was not rejected on the basis of a failure to meet the durational requirement, she has no standing to challenge this provision. Moreover, even if we were to reach the merits of this contention, it appears it has been decided adversely to petitioner's position. Starns et al v. Malkerson et al, 326 F Supp 234 (DC Minn 1970), *aff'd,* 401 US 985, 91 S Ct 1231, 28 L Ed 2d 527 (1971); *see also,* Kirk v. Regents of University of California, 273 Cal App 2d 430, 78 Cal Rptr 260 (1969), *appeal dismissed for want of substantial federal question* 396 US 554, 90 S Ct 754, 24 L Ed 2d 747 (1970).

affidavit. Petitioner did not testify at the hearing below. The absence of any direct evidence of petitioner's intent leads us to uphold the determination that petitioner had not proved change of domicile to Oregon.

In so doing, we necessarily reject petitioner's two additional contentions: (1) that having registered to vote in Oregon establishes as a matter of law that petitioner is domiciled in Oregon for tuition purposes; and (2) that having an Oregon guardian, on the facts of this case, establishes as a matter of law the petitioner is domiciled in Oregon for tuition purposes.

The extent of "residence" needed to vote in Oregon is defined by ORS 250.410. One can be a "resident" for voting purposes without having the intent to remain permanently, *see*, 35 Op Att'y Gen 933 (Or 1971), which is necessary to qualify for "resident" tuition rates. There is nothing inconsistent about election officials' having determined petitioner is a resident for one purpose based on the statutory criteria, and Oregon State University officials' having determined petitioner is not a resident for another purpose based on different criteria.

The Administrative Rules in question provide generally that a student is considered to have the same domicile as his legal guardian. *Cf.,* AR 30.120 (2). The Oregon State University Residency Classification Officer interpreted this rule to be limited to guardianships established for some purpose other than manipulating a student's domicile. We cannot say that this interpretation of the rule is unreasonable. Since petitioner's brief does not take issue with the factual finding that her guardianship was created for such a

purpose, it follows that this fact does not entitle petitioner to the lower tuition rates she seeks.[6]

Affirmed.

FORT, J., specially concurring.

As the majority correctly points out, the respondent duly filed a motion to dismiss this appeal because the petitioner failed to exhaust her administrative remedies. The majority concludes in n 6 that she "did exhaust all clearly available remedies." I disagree with that conclusion and accordingly would allow the motion and dismiss the appeal.

The Oregon Administrative Procedures Act, ORS 183.310-183.500, provides for judicial review of contested cases as follows:

> ORS 183.480: "(1)(a). Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form, under ORS 183.480 to 183.500.

---

[6] Respondent has moved to dismiss this appeal on the grounds that petitioner failed to exhaust the administrative remedy of appealing the decision of the Oregon State University Residency Classification Officer to the interinstitution review committee. Respondent relies upon the following rule:

> "There shall be established a permanent interinstitutional review committee consisting of the officers determining student residence classification at the several institutions of the system and two students, with the Secretary of the State Board of Higher Education as chairman. Residence cases of unusual complexity, especially where there may be conflict of rules, may be referred to this committee for decision * * *." AR 30.130 (1).

We hold that petitioner did exhaust all clearly available remedies. The statement that cases "may be referred to" the interinstitution review committee is too vague for us to conclude that this further administrative review was clearly available to petitioner. This rule appears to provide a procedure within the discretion of the residency classification officer rather than a right of review open to the petitioner.

A petition for rehearing or reconsideration need not be filed as a condition of judicial review unless specifically otherwise provided by statute or agency rule.

"(b) Judicial review of final orders of agencies shall be solely as provided by ORS 183.480 to 183.500.

"(c) Except as provided in ORS 183.400, no action or suit shall be maintained as to the validity of any agency order * * *.

"* * * * * *"

The rules duly adopted by the State Board of Higher Education include:

"AR 30.130 Review of Residence Classification Decisions. (1) There shall be established a permanent interinstitutional review committee consisting of the officers determining student residence classification at the several institutions of the system and two students, with the Secretary of the State Board of Higher Education as chairman. Residence cases of unusual complexity, especially where there may be conflict of rules, may be referred to this committee for decision. In exceptionally meritorious cases, totaling not more than five percent of the nonresident enrollment of the institution concerned, this committee may allow exceptions to the rules.

"(2) There shall be established a permanent administrative review committee consisting of the Chancellor, the Assistant Attorney General assigned to the Department of Higher Education, one student, and the Secretary of the Board of Higher Education as a nonvoting member, with the Chancellor as chairman. A student whose residence classification has been reviewed by the interinstitutional committee referred to in paragraph 1. of this section, and who is dissatisfied with the decision of that committee, may, upon request, have his case

referred to the administrative committee for further review and decision."

It will be noted that in addition to the Interinstitutional Review Committee provided for in AR 30.130 (1), the rules also establish a "permanent administrative review committee," name the members, provide that any student "who is dissatisfied with the decision" of the interinstitutional review committee may, if he so requests, have his case reviewed by the permanent administrative review committee "for further review and *decision.*" (Emphasis supplied.)

Neither of the procedures authorized by AR 30.130 were here complied with. No effort was made to do so. No explanation for this failure is offered. Thus no decision beyond the level of an individual hearing officer at but one of the many institutions operated by the State Board of Higher Education has been announced. Certainly a decision under such circumstances cannot reasonably be said to express any policy or position of the State Board of Higher Education concerning the matter in issue. The failure here to follow the authorized procedure thus makes impossible the orderly development and review of uniform policy applicable to all institutions within the state system by the State Board of Higher Education. I cannot believe that the State Board in the exercise of its rule-making authority could have intended so absurd a result.

Jaffe, Judicial Control of Administrative Action 424 (1965), states the general rule:

"A party will usually be required before challenging the validity of an administrative action to exhaust his administrative remedies. The logic of the rule implies that the remedy is (a) available to

him on his initiative (b) more or less immediately and (c) will substantially protect his claim of right.
\* \* \*"

Rule 30.130 (1) and (2), though inartfully worded, reasonably construed in my view create an administrative procedure designed to assure both student and agency an expeditious route to a final order of the agency from which, and, unless waived, only from which, an appeal to this court is intended to lie. ORS 183.480.

The court here thus invites at the whim of any student the by-passing of the orderly procedures necessary to the development of sound administrative policy in this or any statewide administrative agency.

Accordingly, I do not reach the merits of the appeal and express no opinion thereon. I concur only in the dismissal of the appeal.