**Richard HAYES, Plaintiff,**

**v.**

**The BOARD OF REGENTS OF KENTUCKY STATE UNIVERSITY, a body corporate, and Carl Hill, President of Kentucky State University, et al., Defendants.**

**No. 410.**

United States District Court, E. D. Kentucky, Frankfort Division.

Aug. 3, 1973.

Robert Allen Sedler, Richard N. Rose, Lexington, Ky., for plaintiff.

Ed W. Hancock, Atty. Gen., Com. of Ky., Frankfort, Ky., for defendants.

Tarrant, Combs, Blackwell & Bullitt, Louisville, Ky., for intervening defendants.

## MEMORANDUM

SWINFORD, District Judge.

This class action challenges the right of Kentucky State University to classify as nonresidents for tuition purposes students who have been admitted to the franchise in this State. The plaintiff, a registered Kentucky voter and student at Kentucky State University, does not claim that the procedure utilized by defendants for ascertaining residence is improper, or attack the right of the State to distinguish between residents and nonresidents. Rather, it is argued that the determination of domicil made by the voting authorities is binding upon college officials and that the University's classification of student-voters as nonresidents is constitutionally impermissible.

The record is before the court for decision on two motions: plaintiff's for summary judgment, and defendants' for dismissal as a class action. Plaintiff urges that the University's conduct is improper as a matter of law and, as there are no controverted facts, the case is ripe for summary judgment. While the purported scope of the motion for dismissal is less than clear, it is apparently grounded upon Fed.R.Civ.P. 12(b)(6), relating to motions for failure to state an actionable claim, as well as Fed.R.Civ.P. 23(c)(1), concerning the maintenance of this suit as a class action. The defendants' criticism of the propriety of this class reveals a misunderstanding of the characteristics of this form of action; however, the reliance placed upon Fed.R.Civ.P. 12(b)(6) is well-founded. This court has concluded that for two reasons this action must be dismissed.

Plaintiff contends that the determination of domicil by voting authorities is conclusive upon college officials in assessing tuition rates. This proposition is tenable only if "domicil" bears a fixed meaning and composition for all applications. If the scope of this term varies according to the purpose served, Kentucky State University is obviously not bound by the identification of "domicil" made by other agencies.

Arguing that the meaning of this term is static, plaintiff places considerable reliance upon Restatement (Second) of Conflicts Section 11, Comment o, Paragraph 1, at pp. 47–48:

"The question may arise whether, even under the law of a single state, a person may have one domicil for one purpose (as jurisdiction to give him a divorce) and another domicile for a second purpose (as jurisdiction to impose an inheritance tax upon all his intangibles). As a general proposition, the answer to this question is in the negative. The core of the domicil concept remains constant in all situations. With rare exceptions, the courts assume that the rules of domicil are the same for all purposes, and

it is customary for them to cite indiscriminately in their opinions cases dealing with domicil for purposes other than the one immediately involved." These Restatement views have been subjected to criticism by one of the Reporters who argues that different agencies with varying emphases and motivations will legitimately adopt conflicting definitions. W. L. M. Reese, "Does Domicile Bear A Single Meaning?", 55 Columbia Law Review 589 (1955). Further, this language should be supplemented by Paragraph 2 of the same Comment:

> "What has been said above, however, stands in need of elaboration. Domicil serves a large number of purposes, and undoubtedly somewhat different reasons and motivations underlie its use for certain of these purposes. It may therefore be expected that the courts will on occasion be either more or less inclined to find a person domiciled in a state for one purpose . . . than for another purpose . . . . The extent to which actual court decisions are affected by this consideration is obscured by two factors: (1) even within a single state the courts do not always use identical language in stating the rules of domicil, particularly those relating to the required attitude of mind toward the place in question and (2) the rules, however phrased, are extremely general and flexible in operation.

> To reiterate, the core of domicil is everywhere the same. But in close cases, decision of a question of domicil may sometimes depend upon the purpose for which the domicil concept is used in the particular case." Id. at p. 48.

The Kentucky opinions defining domicil superficially share the plaintiff's unitary conception of this term's meaning. See generally Russell v. Hill, Ky., 256 S.W.2d 508 (1953); Everman v. Thomas, 303 Ky. 156, 197 S.W.2d 58 (1946);

Hite's Adm'r v. Hite's Ex'r, 265 Ky. 786, 97 S.W.2d 811 (1936); Wheeler, County Tax Comm'r v. Burgess, 263 Ky. 693, 93 S.W.2d 351 (1936); Johnson v. Harvey, 261 Ky. 522 (1935); Burr's Adm'r v. Hatter, 240 Ky. 721, 43 S.W.2d 26 (1931); Robinson v. Paxton, 210 Ky. 575, 276 S.W. 500 (1925); Pettit's Ex'x v. City of Lexington, 193 Ky. 679, 237 S.W. 391 (1922). A more detailed reading of these decisions reveals the impropriety of such a conclusion. First, those cases characterized and applied "domicil" to a single function—there was no inquiry into the existence of a definitional variance according to the purpose served. Second, several of these opinions suggested by implication that the principles enunciated be restricted to the particular application examined. Thus, in Everman v. Thomas, supra, 303 Ky. at 168, 197 S.W.2d at 66, it was held that,

> "In law every person has a domicile, but only one *for the purpose of* exercising the right of suffrage." (Emphasis supplied).

Similarly, this court discussed domicil "for voting purposes" in connection with its analysis of franchise discrimination against students. Bright v. Baesler, E.D.Ky., 336 F.Supp. 527 (1971). See also Ruoff v. Brownell, D.C., 14 F.R.D. 371 (1953).

The courts tend to regard the place of voting as one of several relevant factors to be considered in attempting to ascertain the litigant's domicil for a particular purpose. In Dist. of Columbia v. Murphy, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329 (1941), the Supreme Court enumerated and discussed various indicia of domicil, including: the individual's intent; nature and place of employment; type of housing; financial arrangements, and social ties. Voting played a significant, albeit limited, role:

> "Whether or not one votes where he claims domicile is highly relevant but by no means controlling. Each State prescribes for itself the qualifications

of its voters, and each has its own machinery for determining compliance with such qualifications. A vote cast without challenge and adjudication may indicate only laxity of the state officials, and even an adjudication of the right to vote cannot preclude the levy of a tax by an arm of the Federal Government. On the other hand, failure to vote elsewhere is, of course, not conclusive that domicile is here." Id. at 456–457, 62 S.Ct. at 310.

Other decisions have followed this reasoning. Ascertaining domicil for jurisdictional purposes, the court in Lyons v. Borden, D.Hawaii, 200 F.Supp. 956, 958 (1961), warned against according excessive weight to the place of voting.

"A careful study of the authorities indicates that even the solemn acts of registering under oath to vote, and voting, in a new jurisdiction, do not have a conclusive effect—do not constitute the absolute estoppel to claim retention of the previous domicile—contended for by counsel for the defendant."

In Mallon v. Lutz, E.D.Mich., 217 F. Supp. 454 (1963), a diversity determination was conducted by examining numerous factors; voting was considered but not given conclusive weight. While the court in Hadnott v. Amos, M.D.Ala., 320 F.Supp. 107 (1970), aff'd, 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1972), stated that every individual has only one domicil, the decision considered a number of circumstances in that identification. Analyzing this concept for tax purposes, the Kentucky Court in Pettit's Ex'x v. City of Lexington, supra, weighed but did not accord decisive effect to voting domicil. See also Burr's Adm'r v. Hatter, supra.

The plaintiff in West v. Bowers, 502 P.2d 270 (Or.1972), relied on numerous local involvements, including voting, to buttress her claim that she was improperly denied resident student status. Noting that variance with the Restatement's unitary application of "domicil"

is not necessarily unconstitutional, the Oregon Court held that contrary determinations may reflect the purpose served by this concept:

"There is nothing inconsistent about election officials having determined petitioner is a resident for one purpose based on the statutory criteria, and Oregon State University officials having determined petitioner is not a resident for another purpose based on different criteria." Id. at 276.

These authorities manifest that domicil is not susceptible to a rigid and arbitrary definition. The term will display varying hues as its application shifts. Consequently, there is no reason to presume that a determination of domicil by voting authorities has binding effect upon college officials.

Even if plaintiff's contention that domicil bears a unitary meaning be sustained, this classification among residents is not necessarily prohibited by the Constitution. Although the states must treat all citizens equally, dissimilar treatment is not automatically proscribed. Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). Depending upon the quality of the interest affected, two tests have been formulated to determine the constitutionality of various state-imposed classifications. In areas involving fundamental rights such as welfare, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and voting, Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274 (1972), the state must demonstrate that the categorization is necessary for the promotion of a compelling interest; where the right abridged is not so "fundamental" in nature, this demanding standard need not be met.

The Court in Shapiro, supra, intimated that the strictures relating to welfare deprivations would not necessarily be applicable to tuition rates:

"We imply no view of the validity of waiting-period *or* residence require-

ments determining eligibility to vote, eligibility for tuition-free education . . . and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel." Id. 394 U.S. at 638, note 21, 89 S.Ct. at 1333.

The most recent decision discussing this question is Kelm v. Carlson, 6th Cir., 473 F.2d 1267 (1973). The tuition provision there challenged required proof of offer and acceptance of Ohio employment by the student. Recognizing that in such matters the state may impose a strong burden of proof upon the individual claiming residence, the court held,

> "that the regulation we deal with herein is not concerned with one of the fundamental rights like voting or welfare so to be tested against the 'compelling state interest' standard." Id. at p. 1271.

The Sixth Circuit identified as the proper standard the one stated in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972): "this Court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose."

Other decisions examining the tuition problem have utilized the same criterion. Starns v. Malkerson, D.Minn., 326 F. Supp. 234 (1970), aff'd mem., 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), involved a challenged irrebuttable presumption that students not residing in Minnesota for one year prior to college admission were not entitled to a lower tuition rate. Plaintiff's allegation that the challenged regulation "chilled" his right of travel and should consequently be tested against the "compelling state interest" standard outlined in Shapiro was rejected on two grounds: (1) Statistical evidence relating to the number of nonresidents attending Minnesota institutions indicated that the

higher tuition did not deter out-of-state students from attending local schools; (2) the university fees did not have "the effect of denying the basic necessities of life to needy residents." Id. at 238. Recognizing that the State was prejudicing a class of residents, the court held that satisfaction of the more rigorous test was unnecessary since the claimed abridgement did not involve a fundamental right. See also Clarke v. Redeker, S.D.Iowa, 259 F.Supp. 117 (1966).

Several state courts have reached similar decisions. In Kirk v. Board of Regents of Univ. of California, 273 Cal. App.2d 430, 78 Cal.Rptr. 260 (1969), appeal dismissed for want of substantial federal question, 396 U.S. 554, 90 S.Ct. 754, 24 L.Ed.2d 747 (1970), plaintiff claimed he should be classified as a local domiciliary. Intimating that voting and tuition residence are not always synonymous, the California Court ruled that plaintiff's right of travel was not infringed by the restriction:

> "While we fully recognize the value of higher education, we cannot equate its attainment with food, clothing and shelter. Shapiro involved the immediate and pressing need for preservation of life and health of persons unable to live without public assistance, and their dependent children.

> Thus, the residence requirements in Shapiro could cause great suffering and even loss of life. . . . Charging higher tuition fees to nonresident students cannot be equated with granting of basic subsistence to one class of needy residents while denying it to an equally needy class of residents." 78 Cal.Rptr. at 266–267.

See also Arizona Board of Regents v. Harper, 108 Ariz. 223, 495 P.2d 453 (1972); Thompson v. Board of Regents of Univ. of Nebraska, 187 Neb. 252, 188 N.W.2d 840 (1971); Glusman v. Trustees of Univ. of North Carolina, 281 N.C. 629, 190 S.E.2d 213 (1972).

The mode of classification utilized by the University does not violate the "non-fundamental right" standard outlined above. The objective—providing residents with the most economical education attainable—is indisputably valid, and especially relevant in view of the comparatively low Kentucky per-capita income indicated by the arguments. This court is also satisfied that the Guidelines promulgated by the Council on Higher Education focus with a reasonable degree of accuracy upon the proper identification of domicil for the purpose of assessing tuition. Students dissatisfied with their classification have recourse to the channels of administrative review set out in the Guidelines. Although in individual instances improper determinations may have been made, the maintenance of utopian standards is not required by the Constitution:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

The practice here attacked is not constitutionally proscribed. For the reasons discussed above, an order will be entered overruling the plaintiff's motion for summary judgment and sustaining the defendants' motion for dismissal as a class action.