Argued July 10, reversed December 19, 1974, petition for
rehearing denied February 11, 1975

# THOENES, *Respondent, v.* TATRO, *Appellant.*

529 P2d 912

*James C. Tait,* Oregon City, argued the cause for appellant. With him on the briefs were Frederic D. Canning and Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

*Ronald J. Loew,* Portland, argued the cause for respondent. With him on the brief was William W. Shatzer, Portland.

O'Connell, C.J.

This is an action to recover damages for bodily injuries. A default judgment was entered January 31, 1973. In March, 1973, defendant moved to quash the

return of service and vacate the judgment. After denial of this motion, he moved the court to reconsider and for leave to supplement the record. Defendant appeals from the orders denying each of these motions.

The complaint in the underlying action (a personal injury action charging defendant with negligent operation of his automobile on December 10, 1970) was filed on November 20, 1972. A copy of the complaint and summons were delivered to the Sheriff of Multnomah County the same day. The return of service filed the next day states that the deputy sheriff served the defendant by substituted service upon his mother at the family home pursuant to ORS 15.080 (7), which provides in part:

"* * * If the defendant cannot be found at his usual place of abode, then service may be made to a member of the family over 14 years of age who is at the abode."

Before defendant had an opportunity to see them, the papers so served were transmitted by his parents to Preferred Risk Mutual Insurance Company, which had insured defendant's father against auto liability of his household. Defendant's parents did not inform him of the service when they delivered the papers to the insurance company. The record does not reveal when or how defendant became aware of the action against him.

Soon after receiving the papers on November 26 or 27, Joseph Ricks, claims manager of Preferred Risk, telephoned plaintiff's attorney and obtained "an indefinite extension of time in which to answer" the complaint. This stipulation was oral and was not followed by filing a stipulation or motion in court or by invoking the participation of the court in any other way.

During the early part of December, 1972, Mr. Ricks consulted Preferred's counsel with respect to the case. He was advised that the service appeared to be defective and that the request for an extension should be withdrawn. On December 11, 1972,[1] Mr. Ricks wrote to plaintiff's attorney extending an offer of settlement and in addition, stated:

> "Also, please consider the indefinite extension of time to answer terminated as of your receipt of this letter."

A default judgment was taken on January 31, 1973. On March 13, 1973, defendant, through the attorney representing Preferred Risk, made a special appearance to contest jurisdiction over his person based upon irregularities in the summons and the substituted service. The court held that the service was valid, that the summons was valid and moreover, that defendant had appeared generally by virtue of the indefinite extension and had therefore waived any jurisdictional defects.

■ Defendant then filed a motion to supplement the record for the purpose of including a copy of the Preferred Risk policy effective on the date of the accident (to show that the policy limits were less than the amount of the default judgment), and moved the court to reconsider. Both motions were denied.

ORS 15.030 provides:

> "A voluntary appearance of the defendant shall be equivalent to personal service of the summons upon him."

---

[1] This is two years and one day after the accrual of the cause of action. The applicable statute of limitations is ORS 12.110 (1) which requires bringing the action within two years. *But see* ORS 12.150 and ORS 12.020 (2).

The word "appearance" is defined in ORS 16.140:

> "A defendant appears in an action or suit when he answers, demurs or files a motion therein and until he does so appear he shall not be heard in such action or suit * * *."

ORS 16.140 was not intended to define or limit the meaning of the term "voluntary appearance" in ORS 15.030.[2] Thus, we are left to define voluntary appearance with reference only to its place in the general procedural code. The courts, in dealing with similar statutes, have held from the beginning that one might appear specially to contest jurisdiction and that such appearance would not waive the very objection raised.[3]

■■ But the cases are in substantial disagreement as to the requisites of a special appearance. If the defendant appears and requests relief which can be granted *only* on the hypothesis that the court has jurisdiction, the appearance indisputably would be general and not special.[4] At the other end of the spectrum, if the defendant seeks to dismiss the case on the ground that the court has no jurisdiction, the appearance (without question) would be special. However, where the purpose of the defendant's appearance cannot be ascertained from the nature of the relief sought, the problem of classification becomes more difficult. The position could be taken that an appearance will be treated as general whenever it does not expressly appear that the sole purpose of defendant's request for relief is to contest the jurisdiction of the court. This

---

[2] *See* Belknap v. Charlton, 25 Or 41, 34 P 758 (1893), interpreting an earlier version of ORS 16.140.

[3] Homburger and Laufer, Appearance and Jurisdictional Motions in New York, 14 Buffalo L Rev 374 (1965); Note, 59 Dick L Rev 156 (1955).

[4] Belknap v. Charlton, *supra* note 2.

seems to be the view taken by some courts,[8] including this court in at least one older case.[9]

Alternatively, it could be held that where the request for relief is such that it could have been sought either to test the court's jurisdiction or to obtain other relief, it will constitute a special appearance if the defendant, in making his application to the court, shows that he does not intend thereby to submit himself to the jurisdiction of the court. This view has been adopted by a number of courts[10] and by the Restatement of Judgments. The rationale for this more flexible approach is given by the Restatement of Judgments in comment *b* to § 19, pp. 91-92 (1942):

> "The defendant may be in a position where he wishes an extension of time before determining what steps to take in an action brought against him. The mere fact that he makes a motion for an extension of time in which to file his answer does not confer jurisdiction over him upon the court, provided that in making his application to the court he shows that he does not intend thereby to submit himself to the jurisdiction of the court. Thus, a defendant does not subject himself to the jurisdiction of the court by making a motion for an extension of time in order that he may determine whether to plead to the jurisdiction of the court over him. Whether or not the application is granted, he is not precluded from thereafter filing an answer or demurrer or motion based upon the lack of jurisdiction over him."

This rule has even been applied to find an appearance special when the defendant had not made up his mind

---

[8] *See* Annot., 81 ALR 160, 166-169 (1932).

[9] *See* Sit You Gune v. Hurd, 61 Or 182, 120 P 737, 1135 (1912).

[10] Ex Parte Cullinan, 224 Ala 263, 130 So 255, 81 ALR 160 (1931); Palmer v. Superior Court, 192 Cal App 2d 302, 13 Cal Rptr 301 (1961); Davenport v. Superior Court, 183 Cal 506, 191 P 911 (1920).

whether to answer on the merits or contest the court's jurisdiction at the time he sought an extension of time.[8]

Another possible view is to hold that a request for a continuance does not preclude the defendant from raising the question of jurisdiction of the court in the absence of circumstances justifying the application of the doctrines of waiver or estoppel. The premise underlying this approach is that the question of the jurisdiction of a court is like any other issue which may arise in litigation and has no special sanctity calling for special treatment in the litigation process. It would seem to follow that if the defendant desires time to sort out the issues in the case brought against him or to decide whether or not to defend, he should be given the time to decide whether he wants to raise the issue of jurisdiction. There would seem to be no more reason for making him disclose his reason for requesting time for this purpose than where he seeks additional time to consider the stand he will take on any other issue in the lawsuit.[9]

---

[8] Tresway Aero, Inc. v. Superior Court, 5 Cal3d 431, 96 Cal Rptr 571, 487 P2d 1211 (1971); Woodard & Woodard v. Tri-State Milling Co., 142 NC 100, 55 SE 70 (1906).

[9] Not infrequently, in the haste that attends the practice of the law counsel for the defendant will, upon receiving the complaint, find it necessary to seek an extension of time before he knows anything about the facts of the case or what his tactics will be in defending the lawsuit. If the rule requiring him to disclose his purpose in making a request for time is adopted, he must, if he desires time, either investigate the facts relevant to the question of jurisdiction or waive the right to raise the issue thereafter. There would appear to be no reason for imposing this choice upon the defendant. As indicated above, if the plaintiff is harmed by defendant's non-disclosure of his purpose in seeking an extension, the principle of estoppel or waiver is available to provide an appropriate remedy. See Woodard & Woodard v. Tri-State Milling Co., 142 NC 100, 55 SE 70 at 71 (1906).

Whichever of these views one would be inclined to endorse, in the absence of an estoppel the jurisdiction of the court should not be held to attach for any purpose until the defendant has in some way used the machinery of the court to serve his ends. A motion for an extension of time would, of course, constitute such a use.[10] And a stipulation between the parties for an extension of time, if filed with the court, could be deemed a use of the court's processes.[11]

■ In the present case the stipulation was not filed in court. The stipulation was oral and was never reduced to writing. Moreover, it was not a stipulation between the attorneys for the respective parties, but was entered into between plaintiff's attorney and the claims manager for defendant's insurer. The question is whether these circumstances constitute a general appearance.

We have found no cases recognizing as a general appearance an unfiled stipulation for the extension of time. This is not surprising for it would seem strange indeed to treat as an appearance conduct which does not invoke any action from the court or use the procedures of the court in any way. Although the reasoning in *Multnomah Lumber Co. v. Weston Basket Co.*, 54 Or 22, 99 P 1046, 102 P 1 (1909) seems to be applicable not only where a stipulation for an extension of time is filed but also where it is not, we refuse to treat that case as controlling in the case of an unfiled stipulation.

---

[10] Whether such use should be regarded as constituting a general appearance would present another question.

[11] In fact, the filing of such a stipulation was held to be a general appearance in Multnomah Lumber Co. v. Weston Basket Co., 54 Or 22, 99 P 1046, 102 P 1 (1909). Whether we would adhere to that view today, we need not now decide.

We are thus brought to a consideration of whether jurisdiction was properly acquired over the person of defendant. As noted above, service of the complaint and summons was made, not upon defendant himself but upon his mother. At the foot of the return of service the process server made the following notation: "Deft. is in Colorado at School." Plaintiff rests the sufficiency of this procedure upon the applicability of ORS 15.080 (7), which provides in pertinent part, as follows:

"* * * If the defendant cannot be found personally at his usual place of abode, then service may be made to a member of his family over 14 years of age who is at the abode."

■ Defendant moved to quash service and vacate the judgment, contending that the statute did not apply because service was not made at his place of abode nor to a member of his family within the meaning of the statute.[10] The essence of defendant's argument is that his parents' home was not his abode for purposes of service at the time of the delivery of the summons and complaint to his mother because he was living in Arvada, Colorado in attendance at the Rocky Mountain College of Christ. In support of this contention, defendant submitted his affidavit and his mother's affidavit to the effect that defendant had been in school in Colorado since September of 1971. At the time of service, defendant was 21 years old and was supporting

[10] Defendant attacks the sufficiency of the summons as well. Although service was attempted upon him within Oregon, the form of summons used was that appropriate to out of state service. Thus the warning legend stated that he had four weeks to appear rather than the ten days actually allowed him. Since the defendant did not appear within four weeks and default was not taken within four weeks, defendant may not claim he was mislead to his prejudice. St. Arnold v. Star Expansion Industries, 268 Or 640, 521 P2d 526 (1974); State ex rel Kalich v. Bryson, 253 Or 418, 453 P2d 659 (1969).

himself entirely with earnings as a carpenter's finisher. During the relevant period he spent portions of extended school vacations visiting his parents at their home in Portland when his finances would allow. During such visits, defendant slept on the couch because his sister occupied the room that he had regularly occupied before he left for college.

Plaintiff did not dispute the accuracy of these statements but introduced evidence of defendant's continued relationship with Oregon. Chief among these was defendant's use of his parents' address as his own on his Oregon driver's license and on his automobile registration. Plaintiff also emphasized that defendant had not registered to vote in Colorado or established other official ties with that state. Finally, plaintiff pointed to defendant's lack of firm plans for establishing his residence after completion of his course of study in Colorado.[9]

After hearing this evidence, the trial court denied the motion to quash, ruling that defendant was properly served under ORS 15.080 (7). It based this ruling on the view that the affidavits did "not show any specific intent to return to Oregon." The court said:

> "Neither affidavit shows any specific intent to change *residence,* either, not a thing about it. In fact, the only thing I have here is that he is in school * * * in Colorado and I have had kids go to school in Washington but their home was still here in Portland.

---

[9] In his affidavit, defendant stated:

"My future plans are not certain; I may remain in Colorado, move to Kansas for further study upon graduation from school, or I may move back to the Pacific Northwest and establish a home there. My plans since September of 1971 have been to live and attend school here in Arvada for an indefinite period of time."

"I have nothing before me that would show anything other than David Tatro's residence as being in Portland, his place of abode. Service was made according to the statutes, as I understand them." (Emphasis added.)

It appears from the above that the decision below was based upon an equation of "usual place of abode" with domicile as that concept is used in the resolution of conflicts of laws and questions of the limits of state power, and, alternatively, on the view that a college student retains his parents' residence regardless of his own living circumstances. Because neither premise can be accepted without reservation, we must examine the applicability of the statute in this case independently.

██ Any meaningful analysis of the jurisdictional requirements of service must begin with a clear view of the interests involved. Effective personal jurisdiction is subject to two independent constitutional requirements: (1) state jurisdiction in the sense of state power over the parties, and (2) notice of the pendency of a dispute and an opportunity to defend. In this case, the first requirement of state jurisdiction clearly is met.[14] That being so, the only question is the adequacy of notice to defendant of the pendency of the action against him and his opportunity to defend. Therefore, the concept of domicile,[15] based upon the specific intent to make one's home in a particular place,

---

[14] ORS 14.035 (1)(b).

[15] The dictum in McFarlane v. Cornelius, 43 Or 513, 522, 73 P 325, 74 P 468 (1903) to the effect that "dwelling house" or "abode" is synonymous with *a* domicile is not to be taken to mean that abode and the *concept* of domicile are synonymous. In that case this court was using "a domicile" in the sense of a dwelling, rather than to state the locus of loyalties yielding state jurisdiction over its citizens.

which is designed to determine the limits of state power, has no direct application in this case.

It is to be noted, then, that the question of what constitutes defendant's "usual place of abode" is not one of abstract definition, but must be answered with the notice requirements of due process clearly in mind. The touchstone for modern analysis of the notice requirement is found in the practical approach established and applied in *Mullane v. Central Hanover Bank & Trust Co.,* 339 US 306, 315, 70 S Ct 652, 94 L Ed 865, 874 (1950).

"* * * [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected * * *, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." (Citations omitted.)

■ We think it is clear that to comport with this standard, "usual place of abode" must be taken to mean such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for defendant to appear. Whether a mode of service is "reasonably likely" to come to defendant's attention is to be judged against the alternative modes of service practically available.

■ In the present case it cannot be said that the home of defendant's parents is a center of defendant's activ-

ities. Although he visits there apparently with some regularly, it is clear that the only place which could reasonably be called his abode in the sense of constituting the center of his home activities in his apartment in Colorado. We are aware that there are cases from other jurisdictions which might lend support to the service in this case,[16] but we find these unpersuasive. First, the statutes relied upon in some of those cases, though similar in purpose to our own, differ in certain particulars which allow a broader reading.[17] Secondly, these cases are, for the most part, decided without adequate consideration of the constitutional requirements of effective service; the determination of the meaning of "abode" or "residence" dealt with merely as a question of definition.

The plaintiff seeks to avoid the effect of this holding by arguing that defendant should be estopped from denying that his parents' home remained his usual place of abode "because he maintained their address as his own for purposes of his driver's license and automobile registration." We find this argument to be without merit. In the first place, it is entirely possible that defendant remained an Oregon "resident" for many questions, while nonetheless making his usual place of abode in Colorado.[18] Even if defendant did furnish

[16] See e.g., Hubbard v. Brinton, 26 FRD 564 (D Pa. 1961). But see Missell v. Hayes, 84 NJL 196, 85 A 818 (1913); Warfield v. Fischer, 94 NJ Super 142, 227 A2d 148 (1967). See generally, Annot., 32 ALR3d 112 (1970).

[17] See Walker v. Stevens, 52 Neb 653, 72 NW 1038 (1897) ("usual place of residence" not restricted to place of abode at the time of service); Ruth & Clark, Inc. v. Emery, 233 Iowa 1234, 11 NW2d 397 (1943) ("residence"); Hornung v. Mills, 7 So2d 665 (La App 1942) (domicile). See Annot., 32 ALR2d 112, 126-129 (1970).

[18] See West v. Bowers, 11 Or App 364, 502 P2d 270 (1973) (Rev. den.); Warfield v. Fischer, 94 NJ Super 142, 227 A2d 148 (1967).

false information to the state, an estoppel would not therefore result. Estoppel requires a representation to the person claiming detrimental reliance. A representation to a governmental agency, though a matter of public record, is not made to plaintiff. The state's policy of requiring accurate reporting is adequately protected by the sanctions of ORS 481.990 and 482.990.

We believe that it is essential to construe our statute as requiring more than a formalistic delivery of the summons and complaint to defendant's domicile or residence where the process server is aware that defendant does not actually reside there and where personal service or service by registered or certified mail with return receipt requested can, without any difficulty, be effected.[9] The sufficiency of service by simply leaving the papers at the defendant's technically defined place of abode must be tested by comparing the probability that defendant will receive actual notice by such service with the probability of his receiving actual notice through other available methods of service which could be employed. It may be that in many, perhaps most, cases a summons and complaint delivered to the domicile of the defendant will find its way to him before the deadline set for his appearance. However, for a variety of reasons, it is possible that notice may not reach the defendant when papers are so delivered. When, as here, this risk can be obviated by service directly upon the defendant at the place where he is

---

[9] Even service by registered or certified mail with return receipt requested directed to the defendant's place of actual abode would provide greater assurance of notice than delivery of the papers to the defendant's technical residence from which he is absent.

known to live[20] and by which he will thus receive actual notice this further step must be taken.[21]

It is possible to construe *Mullane* as requiring this further step. That case tells us that "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." It would seem without question that one truly desirous of notifying defendant of the lawsuit in this case would, after learning of defendant's whereabouts, give him direct notice rather than rely upon a member of defendant's family to transmit the information.

*Dickenson v. Babich,* 213 Or 472, 326 P2d 446 (1958), although involving a different problem of sufficiency of service, applies this same principle. In that case, service of process upon a resident defendant temporarily outside Oregon by publication and mailing was held insufficient where personal service upon defendant could have been made because his whereabouts were known. The court said: "* * * Apprised of such facts, it appears to us a plaintiff, in order to meet the requirements of due process providing a service of summons most likely to give a defendant actual notice of the pendency of the proceedings, would be required to cause personal service outside the state to be made upon such defendant * * *." (213 Or at 477). Although substituted service upon a member of the defendant's family would, perhaps, provide a greater likelihood of notice to the defendant than service by publication and mailing to the defendant's last known address, the principle recognized in *Dickenson* nevertheless obtains.

[20] *See* ORS 14.035 (2) and ORS 15.110.

[21] For an excellent discussion of the factor of necessity in the analysis of sufficiency of service see Dobkin v. Chapman, 21 NY2d 490, 236 NE2d 451, 289 NYS2d 161 (1968).

It is our conclusion that the attempted service in the present case was insufficient. Therefore, defendant's motion to quash should have been granted.

As noted above, the statute of limitations normally would have barred plaintiff's claim against defendant two years after the collision. We express no opinion on whether the defendant or his insurer might be prevented from raising the statute in defense because of waiver or estoppel growing out of their conduct in this case.

Reversed.

TONGUE, J., dissents.