Argued April 29, reversed July 18, reconsideration denied September 8,
petition for review allowed November 15, 1977

STATE ex rel KARR, *Respondent,*

*v.*

SHOREY, *Appellant.*

(No. 33970, CA 7110)

567 P2d 118

Dean Heiling, Roseburg, argued the cause and filed the briefs for appellant.

John W. Burgess, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

Defendant appeals from the denial of his special appearance motion to set aside a paternity decree which declared him to be the father of plaintiff's illegitimate child and ordered him to pay $50 per month child support. The basis of the motion was that the court lacked jurisdiction over defendant at the time the decree was entered.

On May 29, 1969, plaintiff filed a filiation petition pursuant to ORS 109.125 et seq. No citation to appear was issued to defendant[1] and there is no indication that he had any notice of the proceeding prior to the entry of the paternity order on June 4, 1969, except as indicated prospectively in his stipulation.

The paternity order was predicated upon an agreement signed by defendant on May 12, 1969 in which he acknowledged that he was the father of plaintiff's child and upon an undated document entitled "STIPULATION FOR ENTRY OF AN ORDER ESTABLISHING PATERNITY" also signed by defendant, apparently at the same time. Both printed documents follow:

---

[1] ORS 109.125(4) and (5) specifically provide for the issuance of such a citation:

"(4) Upon filing of the petition, the court shall issue a citation directing the defendant to appear at a time and place certain to answer the petition. The citation shall further state that for failure to appear as directed the court may enter its decree for the relief prayed for in the petition.

"(5) The citation shall be served as in civil cases by personally serving the defendant with a copy of the citation and petition."

[ 139 ]

IN THE CIRCUIT COURT OF THE
STATE OF OREGON

For the County of Douglas

STATE OF OREGON, ex rel
SHERIDEAN DEBORAH KARR,

Plaintiff,

vs.

DOUGLAS W. SHOREY,

Defendant.

No.

## STIPULATION FOR ENTRY OF
## AN ORDER ESTABLISHING PATERNITY

WHEREAS a Court Proceeding has been instituted by Sheridean Deborah Karr, Plaintiff, against Douglas W. Shorey, Defendant, for the purpose of establishing paternity and requiring said Defendant to pay support money for Scott D. Karr, a child(ren) born out of wedlock; and

WHEREAS the parties desire to settle the matter without dispute;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED TO between Sheridean Deborah Karr and Douglas W. Shorey that an order based upon an agreement attached hereto and made a part hereof be entered in this matter establishing paternity and allowing support for said child(ren).

/s/  Douglas W. Shorey
            Defendant

/s/  Sheridean Deborah Karr
            Plaintiff

/s/  Eugene E. Laird
        Assistant Attorney General
        Welfare Recovery Division

[ 140 ]

IN THE CIRCUIT COURT OF THE
STATE OF OREGON

For the County of Douglas

STATE OF OREGON, ex rel
SHERIDEAN DEBORAH KARR,

Plaintiff,

vs.

DOUGLAS W. SHOREY,

Defendant.

No.

## PATERNITY AGREEMENT

WHEREAS Sheridean Deborah Karr alleges that she gave birth to a (female) (male) child named Scott D. Karr on the 7th day of April, 1969, in the City of Roseburg, County of Douglas, State of Oregon; and

WHEREAS the said Sheridean Deborah Karr names Douglas W. Shorey as the father of said child; and

WHEREAS it is the desire of said Sheridean Deborah Karr and Douglas W. Shorey to enter into an agreement providing for the support and acknowledgment of the paternity of said child;

NOW THEREFORE, It Is Hereby Agreed by and between Sheridean Deborah Karr and Douglas W. Shorey that the said Douglas W. Shorey is the father of said child born to Sheridean Deborah Karr as above stated and that the said Douglas W. Shorey hereby acknowledges that he is the father of said child and agrees to pay the sum of $50.00 per month for the support of said child; the first payment of $50.00 to be made on or before the 1st day of July, 1969, and like payments of $50.00 to be made on or before the 1st day of each and every month thereafter until said child reaches the age of majority, is emancipated, or until further order of this Court.

DATED this 22nd day of May, 1969.

WITNESSES:

/s/ James R. Warren    /s/ Sheridean Deborah Karr

Dated this 12th day of May, 1969.

WITNESSES:

/s/ James R. Warren    /s/ Douglas W. Shorey

[ 141 ]

Defendant complied partially with the terms of the paternity judgment[2] until, in May of 1975, he filed his motion challenging the court's jurisdiction on grounds of lack of notice and service of process.

■ A court cannot adjudicate a personal claim unless it has jurisdiction over the person of the defendant. If that jurisdiction is lacking when an order is entered, then the judgment is void and it will forever so remain. *Wiles v. Wiles,* 211 Or 163, 315 P2d 131 (1957).

Under ORS 15.030, the only means by which a court may obtain personal jurisdiction are service of process or voluntary appearance. It provides:

"From the time of the service of the summons, or the allowance of a provisional remedy, the court shall be deemed to have acquired jurisdiction, and to have control of all the subsequent proceedings. A voluntary appearance of the defendant shall be equivalent to personal service of the summons upon him."

Since, in this case, there was no service of a summons upon defendant, the court's jurisdiction, if it exists, must be predicated upon a voluntary appearance in the proceeding by defendant. The only acts of defendant, prior to the entry of judgment which might arguably be construed as such an appearance are his execution of the paternity agreement and stipulation. The issue, therefore, is whether, by signing those documents, or either of them, defendant made a voluntary appearance.

■ Whether a party has made an appearance in an action sufficient to invest the court with jurisdiction is not a question susceptible to formulaic resolution. Although, on its face, ORS 16.140 appears to provide such a formula: "[a] defendant appears in an action or suit when he answers, demurs or files a motion therein * * *," the Supreme Court has held that this defini-

---

[2] Contempt proceedings for failure to comply with the support order were initiated on January 5, 1973 and on January 31, 1973. The record does not indicate the ultimate resolution of these proceedings.

tion is not exclusive and that a person may voluntarily appear by means other than those enumerated in the statute. *Thoenes v. Tatro,* 270 Or 775, 780, 529 P2d 912 (1974); *Belknap v. Charlton,* 25 Or 41, 34 P 758 (1893). The test of whether an act done in connection with litigation other than a formal answer, demurrer or motion constitutes a voluntary appearance is whether the party has sought by that act to use the machinery of the court in some affirmative way to serve his ends. Thus, in *Charette v. Eisenbraun,* 247 Or 491, 547 P2d 612 (1976), the fact that defendant secured a medical examination of plaintiff after institution of a personal injury action, was held not to be a voluntary appearance because the examination was secured through a private agreement between the parties, not through judicial compulsion. Similarly, in *Thoenes v. Tatro,* 270 Or 775, 529 P2d 912 (1974), where defendant obtained an extension of time in which to plead through the private consent of plaintiff, no jurisdiction was thus obtained because no relief had been sought or obtained through the court.

In this case, it is unlikely that defendant's execution of the paternity agreement and stipulation was intended to serve his own ends. Apart from the theoretical and speculative advantages which accrue from parenthood, his acknowledgment of paternity was wholly contrary to his interests. We decline to base our holding on that basis, however, because an invocation of the court's jurisdiction is no less so because it is unwise or contrary to one's best interests.

■ Conversely, the fact that the papers which defendant signed were captioned in the manner of official court documents does not transform an extra-judicial agreement into a voluntary appearance before the court referred to in the captions. The effect of a document is determined by its content not by its form. *See, Sugarman v. Olsen,* 254 Or 385, 388, 459 P2d 545 (1969); *Rogue River Management Co. v. Shaw,* 243 Or 54, 61, 411 P2d 440 (1966).

■ The paternity agreement signed by defendant merely sets forth the terms of a private agreement between the parties. It states that it is "[a]greed by and between" the parties that defendant is the father of plaintiff's child and that he agrees to pay $50 per month child support. In substance, it resembles a property settlement agreement incident to a dissolution of marriage. Like such a property settlement, the paternity agreement herein has only contractual and evidentiary significance. It is not sanctioned by the court, and the court could not, by force of the agreement alone, enter judgment upon it or secure the parties' compliance through contempt proceedings. The agreement does not petition the court to take any action nor does it, in itself, initiate any court process. As the Supreme Court observed in *Thoenes v. Tatro,* 270 Or at 783, "* * * it would seem strange indeed to treat as an appearance conduct which does not invoke any action from the court or use the procedures of the court in any way."

We next consider whether defendant's execution of the stipulation set forth above constituted a voluntary appearance. That stipulation, like the paternity agreement, embodies a private contract between the parties. However, unlike the paternity agreement, the stipulation recites that "a court proceeding has been instituted."[3] By the terms of the stipulation, the parties agree that an order establishing paternity should be entered in that proceeding, based upon the paternity agreement. ORS 109.155 authorizes the court, in a filiation case, to approve any settlement agreement between the parties and to incorporate such an agreement into a decree. The fact that the parties have

___

[3]It appears from the record that, at the time the stipulation was signed by defendant, no court proceeding had, in fact, been initiated. Although the stipulation is undated, we infer that it was executed at the same time as the paternity agreement. The latter document was signed by defendant on May 12, 1969 and the filiation proceeding was not initiated until May 29, 1969. Defendant's affidavit in support of his special appearance motion states that both documents were signed on the same day. The record bears no evidence to the contrary.

contractually bound themselves to permit the court to do so does not, however, confer jurisdiction upon the court.

■ Notwithstanding reference in the stipulation to an ongoing filiation proceeding, defendant's execution of the document did not, in itself, invoke action by the court under ORS 109.155 or set in motion any court procedure pursuant to that statute. Rather, it was plaintiff's subsequent filing of the paternity agreement and stipulation which was, in effect, a motion that the court approve the parties' agreement and enter a decree accordingly. The facts giving rise to jurisdiction must appear affirmatively on the face of the record. *Hughes v. Aetna Casualty Co.,* 234 Or 426, 432-33, 383 P2d 55 (1963). Nothing in the stipulation between the parties indicates that defendant affirmatively sought by it to have the court approve and enforce the private agreement of the parties.

The stipulation does not have the procedural stature of a confession of judgment and we cannot so characterize it. It is possible to make a voluntary appearance by confession of judgment if certain formal requisites are met. With respect to confessions of judgment in actions pending, ORS 26.040 provides:

> "The confession and assent thereto shall be in writing, subscribed by the parties or their attorneys, and acknowledged by each before some office authorized to take acknowledgments of deeds; but such acknowledgment is not required when the parties or their attorneys shall appear in court when the judgment or decree is given, or before the clerk in vacation by whom the judgment or decree is entered. In all cases, the confession and assent thereto, and the ackowledgment, if any, shall be filed with the clerk."

With respect to confessions of judgment prior to institution of an action, ORS 26.120 provides:

> "The confession shall be made, assented to and ackowledged, and judgment given in the same manner as a confession in an action pending; besides which, the confession shall be verified by the oath of the party making it, and shall authorize a judgment to be given for

a particular sum. If it be for money due or to become due, it shall state plainly and concisely the facts out of which such indebtedness arose, and shall show that the sum confessed is justly due or to become due."

The stipulation here is merely signed; it does not meet the procedural standards which must be complied with before an agreement can be a substitute for service, pleading or trial.

We conclude, therefore, that defendant did not make a voluntary appearance by signing the stipulation.[4] Consequently, the court lacked jurisdiction over his person and the order must be vacated.

We expect that the procedure in this case may have been common and that the unfortunate consequences of our opinion may be multiplied.[5] Nevertheless, the importance of restricting the authority of the court to persons and things over which it has jurisdiction is basic and, in view of the simplicity by which this problem could have been and should in the future be avoided, overwhelming.

Reversed.

**THORNTON, J.,** dissenting.

This is a case of first impression in Oregon. The

---

[4] *See, Lindsey v. Ferguson.* 80 SW2d 407, 408 (Texas 1935); *Land and Development Co. v. Weiser Nat. Bk.,* 26 Idaho 717, 146 P 116, 118 (1915). Plaintiff contends that *Multnomah L. Co. v. Weston B. Co.,* 54 Or 22, 99 P 1046, 102 P 1 (1909), suggests a contrary conclusion. That decision is distinguishable on its facts. In *Weston* the defendant corporation obtained from plaintiff a stipulation for an extension of time in which to plead and then *filed that stipulation with the court.* In so doing defendant, with plaintiff's consent, asked the court to refrain from taking action (*i.e.,* entering a default) which could only be undertaken upon the hypothesis that the court had jurisdiction. Had defendant not affirmatively sought the court's forbearance, the mere act of entering into a stipulation with plaintiff would not have been a voluntary appearance. *See. Thoenes v. Tatro,* 270 Or 775, 780, 529 P2d 912 (1974).

[5] We do not decide whether, apart from the enforceability of the judgment, the support provisions of the stipulation and paternity agreement are enforceable as a private contract. Nor do we decide whether defendant is, by virtue of his execution of the stipulation and paternity agreement, estopped from asserting the statute of limitation as a defense to a new filiation proceeding.

issue is the validity of the procedure followed by the state in the compromise and settlement of welfare paternity cases.

The majority concludes that a putative father who admits paternity and agrees in writing before suit to the entry of a decree for the support of the child, and a decree is duly entered pursuant to that agreement, that father nevertheless can come into court some six years later and have the decree set aside because he was not served with a summons and complaint.

I cannot agree. My research, the results of which are summarized below, indicates that the majority conclusion is incorrect and contrary to the weight of authority in the United States.

Starting with the basics, it is of course true as a general rule that a valid personal judgment cannot be entered against an individual without obtaining jurisdiction over his person by personal service of process within the state, or by valid constructive service upon that individual. However, there is a recognized exception to the above rule to the effect that an individual may voluntarily agree before action to submit to the jurisdiction of a *court of competent jurisdiction,* and that a judgment entered pursuant to that agreement is just as valid and binding as one obtained after personal service. It is this latter proposition that is controlling here. This rule is summarized in 21 CJS 133, Courts § 85c (1940), as follows:

"**In the absence of contrary statute, a court having jurisdiction of the subject matter may, as a general rule, acquire jurisdiction over the persons of the parties by their consent.**

"It is well established, as a general rule, that where the court has jurisdiction of the subject matter or cause of action, jurisdiction over the persons of the parties may be conferred by consent, as where defendant has voluntarily submitted to the jurisdiction of the court [numerous cases cited in omitted footnotes]. Accordingly, express or implied consent of the parties to the jurisdiction of the court may operate to cure defects of jurisdic-

[ 147 ]

tion arising from irregularities in the commencement of the proceedings, defective process, or even the absence of process.* * *"

The same rule is found in 20 Am Jur2d 488, Courts § 139 (1965), as follows:

"* * * [A]lthough jurisdiction over the subject matter generally cannot be affected by agreement or consent, in civil cases, at least, a court's jurisdiction over the parties or one of them may arise from voluntary submission by agreement or consent. * * *"

The paternity agreement and stipulation to entry of an order in the instant case are in substance a contract of record made by the parties and approved by the court. *See,* ORS 109.155. This procedure is sometimes termed a "consent judgment" or "judgment by agreement," and is to be distinguished from a judgment by confession or default.[1] The distinctive nature of a "consent judgment" was discussed by our Supreme Court in the early case of *Stites v. McGee,* 37 Or 574, 61 P 1129 (1900). In *Stites* the issue was the power of the trial court under what is now ORS 18.160[2] to vacate a consent decree after the expiration of the term during which it had been rendered. The court, in the course of holding that the trial court had no power to set aside the consent decree, declared:

"* * * [A] consent decree is not, in a strict legal sense, a judicial sentence or judgment of the court, but is in the nature of a solemn contract between the parties.

[1] This distinction is expressed in 49 CJS 268, 269, Judgments § 134 (1947), as follows:

"A judgment by consent is distinguished from a judgment by confession, in that its special characteristic is the settlement between the parties of the terms, amount, or conditions of the judgment to be rendered; the first presupposes an agreement of the parties as a basis for it, and the latter an act of defendant alone. They also differ in that the court exercises a certain amount of supervision over the entry of judgments by confession, and equitable jurisdiction over their subsequent status."

[2] ORS 18.160 provides:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

[ 148 ]

When a decree is made by the consent of the parties, the court does not inquire into the merits or equities of the case. The only questions to be determined by it are whether the parties are capable of binding themselves by consent, and have actually done so. These two facts appearing, the court orders a decree to be entered, and when thus entered, showing on its face that it is by consent, it is absolutely conclusive upon the consenting parties. It cannot be amended or varied in any way without the consent of all the parties affected by it; nor can it be reheard, vacated, or set aside by the court rendering it, especially after the expiration of the term; nor can it be appealed from or reviewed upon a writ of error. The only way it can be attacked or impeached after the expiration of the term, whatever the rule may be during the term, is by an original bill, on the ground of fraud or mutual mistake * * *." 37 Or at 576-77.

The power of the court to enter judgment by consent is dependent upon the existence of actual consent of the parties at the time the agreement receives the sanction of the court, or is rendered and promulgated as a judgment. *Van Donselaar v. Van Donselaar,* 249 Iowa 504, 87 NW2d 311 (1958). *Accord: Bohlman v. Big River Oil Company,* 124 NW2d 835 (ND 1963); *Farr v. McKinzie,* 477 SW2d 672 (Tex Civ App 1972).

In this state, under ORS 109.165, the court is given the express power to "set aside, alter or modify" a filiation support decree.[3]

I am not persuaded by defendant's argument that the challenged order was and is null and void because he was not served with a summons and therefore the court had no personal jurisdiction over him, citing

---

[3]ORS 109.165 provides:

"Upon motion of either party the court may set aside, alter or modify so much of the decree as may provide for the support of the minor child or child attending school. As to any instalment or payment of money which has accrued up to the time either party files a motion to set aside, alter or modify the decree, the decree is final and the court does not have power to change it. A child attending school is a party for purposes of this section." Enacted by Oregon Laws 1969, ch 619, § 6; amended by Oregon Laws 1973, ch 827, § 12i.

*Pennoyer v. Neff,* 95 US 714, 24 L Ed 565 (1878), and subsequent cases.

While a putative father is entitled to adequate and timely notice and an opportunity to defend in filiation proceedings, where a defendant agrees to a consent judgment he submits himself to the jurisdiction of the court and waives any requirement of notice and hearing. The fact that the paternity agreement and stipulation at bar were signed prior to the filing of the complaint in district court under ORS 109.125 et seq would not invalidate such agreement so long as there was actual consent of both persons in existence at the time the settlement was approved by the court. *See, Van Donselaar v. Van Donselaar; Bohlman v. Big River Oil Company; Farr v. McKinzie,* all supra. The law looks with favor upon compromise and settlement of controversies between parties.[4] Where a settlement is fairly entered into, in the absence of fraud, duress, undue influence, showing that the consent of one of the parties was not freely and voluntarily given, it is conclusive on the rights of the parties to such settlement, *Stites v. McGee,* supra, subject of course to being set aside, altered or modified pursuant to ORS 109.165.[5]

For the above reasons I respectfully dissent.[6]

---

[1]The courts have held that public policy does not require the institution of filiation proceedings before a settlement can be made and the proceedings compromised. *Beattie v. Traynor,* 114 Vt 238, 42 A2d 435, 159 ALR 1399 (1945). *Accord: Dannells v. U. S. National Bank,* 172 Or 213, 138 P2d 220 (1943).

[5]For a recent analysis of our filiation statutes, *see, Fox v. Hohenshelt,* 19 Or App 617, 528 P2d 1376 (1974).

[6]It should also be noted that the consequences of today's decision relieving defendant of liability for child support may well go beyond the instant case. We are apparently dealing with an operating procedure in welfare paternity cases which has been followed by the state since at least 1969, judging from the printed forms used here. Presumably all similar decrees are now to be deemed null and void likewise.