STATE ex rel KARR, *Petitioner,*

*v.*

SHOREY, *Respondent.*

(TC 33970, C/A 7110, SC 25537)

575 P2d 981

■■■■■■■

Al Laue, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and John W. Burgess, Assistant Attorney General. Salem.

Dean Heiling, Roseburg, argued the cause and filed briefs for respondent.

TONGUE, J.

**TONGUE, J.**

This is a proceeding to set aside a paternity decree declaring defendant to be the father of plaintiff's illegitimate child and ordering him to pay $50 per month child support.

Defendant filed a "special appearance motion" to set aside that decree upon the ground that the court had no personal jurisdiction over him, supported by affidavits to the effect that despite the fact that he signed both a paternity agreement and a stipulation for entry of an order establishing paternity, that stipulation was "undated," and that defendant had "no notice" of paternity proceedings filed subsequently and no opportunity to appear and contest the paternity claim.[1] The trial court denied that motion. The Court of Appeals reversed the trial court. 30 Or App 137, 567 P2d 118 (1977), with a dissenting opinion by Thornton, J. We granted review because of the public importance of this case as it reflects upon the validity of such paternity agreements and stipulations.

The paternity agreement and stipulation were as follows:

---

[1]The affidavits also put in issue the genuineness of defendant's signature on the paternity agreement and stipulation for entry of the order establishing paternity and contended, in addition, that defendant's signature was obtained by coercion and undue influence. As noted below, those contentions were abandoned by defendant on this appeal.

IN THE CIRCUIT COURT OF THE
STATE OF OREGON

For the County of Douglas

STATE OF OREGON, ex rel
SHERIDEAN DEBORAH KARR,

Plaintiff,

vs.

DOUGLAS W. SHOREY,

Defendant.

No.

## PATERNITY AGREEMENT

WHEREAS Sheridean Deborah Karr alleges that she gave birth to a (female) (male) child named Scott D. Karr on the 7th day of April, 1969, in the City of Roseburg, County of Douglas, State of Oregon; and

WHEREAS the said Sheridean Deborah Karr names Douglas W. Shorey as the father of said child; and

WHEREAS it is the desire of said Sheridean Deborah Karr and Douglas W. Shorey to enter into an agreement providing for the support and acknowledgment of the paternity of said child;

NOW THEREFORE, It Is Hereby Agreed by and between Sheridean Deborah Karr and Douglas W. Shorey that the said Douglas W. Shorey is the father of said child born to Sheridean Deborah Karr as above stated and that the said Douglas W. Shorey hereby acknowledges that he is the father of said child and agrees to pay the sum of $50.00 per month for the support of said child; the first payment of $50.00 to be made on or before the 1st day of July, 1969, and like payments of $50.00 to be made on or before the 1st day of each and every month thereafter until said child reaches the age of majority, is emancipated, or until further order of this Court.

DATED this 22nd day of May, 1969.

WITNESSES:

/s/ James R. Warren  /s/ Sheridean Deborah Karr

Dated this 12th day of May, 1969.

WITNESSES:

/s/ James R. Warren  /s/ Douglas W. Shorey

[ 456 ]

IN THE CIRCUIT COURT OF THE
STATE OF OREGON

For the County of Douglas

STATE OF OREGON, ex rel
SHERIDEAN DEBORAH KARR,

Plaintiff,

vs.

DOUGLAS W. SHOREY,

Defendant.

No.

STIPULATION FOR ENTRY OF
AN ORDER ESTABLISHING PATERNITY

WHEREAS a Court Proceeding has been instituted by Sheridean Deborah Karr, Plaintiff, against Douglas W. Shorey, Defendant, for the purpose of establishing paternity and requiring said Defendant to pay support money for Scott D. Karr, a child(ren) born out of wedlock; and

WHEREAS the parties desire to settle the matter without dispute;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED TO between Sheridean Deborah Karr and Douglas W. Shorey that an order based upon an agreement attached hereto and made a part hereof be entered in this matter establishing paternity and allowing support for said child(ren).

/s/ Douglas W. Shorey
Defendant

/s/ Sheridean Deborah Karr
Plaintiff

/s/ Eugene E. Laird
Assistant Attorney General
Welfare Recovery Division

Both documents were on printed forms and were apparently signed at the same time prior to the filing of the complaint, which was not personally served upon defendant, and also prior to the entry of the order establishing paternity on June 4, 1969, at which time defendant was not personally present. It appears, however, that defendant made monthly payments of $50 each for the months of July and August 1969 and $20 in September 1969, after which he apparently made no further payments. Contempt proceedings for failure to make such payments were served personally upon the defendant on February 10, 1973, but were not prosecuted to any conclusion. In any event, defendant took no action to set aside that order until May 29, 1975.

During the course of defendant's appeal to the Court of Appeals, defendant's primary contention was that the trial court erred in ruling that a "confession of judgment" prior to institution of suit dispenses with constitutional notice requirements and in ruling that the "confession of judgment" in this case complied with Oregon law. The state contended, to the contrary, that defendant's signing of the paternity agreement and stipulation constituted an "appearance" and thereby conferred jurisdiction upon the court to enter such an order.

The majority opinion by the Court of Appeals proceeds upon the premise that "[u]nder ORS 15.030, the only means by which a court may obtain personal jurisdiction are service of process or voluntary appearance" and that, there having been no service of process, "[t]he issue, therefore, is whether, by signing those documents, or either of them, defendant made a voluntary appearance." The majority then undertakes to demonstrate that the signing of these documents, under these facts, did not constitute either a "voluntary appearance" or an appearance by "confession of judgment," under ORS 26.040 and 26.120. Based upon that reasoning it was held by the majority opinion of the Court of Appeals that "[c]onsequently, the court

lacked jurisdiction over [defendant's] person and the order [of paternity] must be vacated."[2] We disagree.

In advance of oral argument on this petition for review, the parties were requested by letter to be prepared to submit argument on the following questions:

"1. Did the defendant's signing of the stipulation and paternity agreement amount to a consent to enter judgment against him?

"2. Did the signed stipulation and paternity agreement constitute a general appearance, conferring personal jurisdiction on the trial court?"

■ ORS 15.030, by its provisions for personal service and voluntary appearance, was not intended to limit the means of acquiring personal jurisdiction to personal service and voluntary appearance.[3] *Cf. Thoenes v. Tatro,* 270 Or 775, 780, 529 P2d 912 (1974).

■ As stated in Scott, Fundamentals of Procedure 39-41 (1922), as quoted with approval in the leading case of *Gilbert v. Burnstine,* 255 NY 348, 354, 174 NE 706, 707-08, 73 ALR 1453 (1931):

" 'Jurisdiction over the person of the defendant may be acquired by his consent. This consent may be given either before or after action has been brought. Jurisdiction is conferred when the defendant enters a general appearance in an action, that is, an appearance for some purpose other than that of raising the objection of lack of jurisdiction over him. A stipulation waiving service has the same effect. The defendant may, before suit is

---

[2]The dissenting opinion would have held that the order of paternity entered pursuant to the paternity agreement and stipulation was valid as a "consent judgment." Although we agree with the conclusion that the order of paternity was a valid order because of the previous "consent" of the defendant, for reasons stated in this opinion, it was not a "consent judgment" within the usual meaning of that term.

[3]ORS 15.030 provides:

"From the time of the service of the summons, or the allowance of a provisional remedy, the court shall be deemed to have acquired jurisdiction, and to have control of all the subsequent proceedings. A voluntary appearance of the defendant shall be equivalent to personal service of the summons upon him."

[ 459 ]

brought, give a power of attorney to confess judgment or appoint an agent to accept service, or agree that service by any other method shall be sufficient. The defendant in all these cases has submitted to the control of the state and of the court over him. These principles have long been announced by the courts.' "

*See also Aiutana Bankgenossenschaft v. Perren,* 21 Conn Supp 5, 141 A2d 255 (1957), again quoting Scott.

To the same effect, as stated in Restatement of Judgments § 18, Comment *c* (1942):

"A person may agree that if an action is brought against him the court shall have jurisdiction over him, even though he is not served with process in the action. * * *."

As also stated in James, Civil Procedure 626-27, § 12.6 (1965):

"Consent to the jurisdiction of any given tribunal may also be given by an agreement between the parties governing disputes which may arise under the agreement in the future. Such stipulations are given effect where they are not unconscionable. * * *"

*See also* 3 Freeman on Judgments 3053, § 1487 (1925). *Cf. Stites v. McGee,* 37 Or 574, 576-77, 61 P 1129 (1900).

Of particular significance, in our judgment, is the decision by the Supreme Court of the United States in *D. H. Overmyer Co. v. Frick Co.,* 405 US 174 (1972), because of its consideration of the constitutional problem of due process. In that case Overmyer, a corporation, after defaulting in payments owed by it to Frick, executed a "cognovit note" to Frick for $130,997. That note included the following provision:

"The undersigned hereby authorize any attorney designated by the Holder hereof to appear in any court of record in the State of Ohio, and waive this issuance and service of process, and confess a judgment against the undersigned in favor of the Holder of this Note, for the principal of this Note plus interest if the undersigned defaults in any payment of principal and interest and if said default shall continue for the period of fifteen (15) days."

[ 460 ]

After failure by Overmyer to make payments due under that note, Overmyer filed in New York an action against Frick for $170,000 in damages and to stay all proceedings under the note. Frick then, without notice to Overmyer, and under the "cognovit" provision of the note, caused judgment to be entered in Ohio against Overmyer for $62,370, the balance due under the note, plus interest and costs. Overmyer then filed a motion in the Ohio case to stay execution under that judgment and for a new trial, based upon a tendered answer and counterclaim alleging breach of contract by Frick and damages. The Ohio court overruled that motion. That ruling was affirmed by the United States Supreme Court.

In so holding, the court (at 183-84) rejected the contention that the Ohio judgment was invalid for lack of personal jurisdiction over Overmyer because no "genuine appearance" had been made by or on behalf of Overmyer. The court then (at 184) considered whether constitutional requirements of due process were satisfied by the provisions of the "cognovit note" and held (at 185) that due process rights to notice and hearing prior to a civil judgment are subject to waiver; that "parties * * * may agree in advance to submit to the jurisdiction of a given court * * *," at least if such a waiver is "voluntarily, intelligently and knowingly made," and was not a contract of adhesion, and at least when it was conceded that "the judgment court may vacate its judgment upon a showing of a valid defense" by the defendant or of its "pursing its breach-of-contract claim against Frick in a proper forum." *Id.* at 188.

It follows from these authorities, with which we agree, that personal jurisdiction over a defendant may be obtained not only by personal service upon him or by voluntary appearance by him after the filing of an action, suit or other proceeding, but also as the result of consent given by agreement made prior to the filing of an action, suit or other proceeding.

Defendant contends that in Oregon there can be no agreement to submit to the jurisdiction of a court to enter judgment in a future proceeding and to waive constitutional rights to notice and hearing in such a proceeding unless such an agreement satisfies the requirements of ORS 26.110 and 26.120 and that this paternity agreement and stipulation do not satisfy the requirements of those statutes.[4]

By ORS 26.010 to 26.040, inclusive, provisions are made for confessions of judgment *after* commencement of suit or action. By ORS 26.110 and 26.120 provisions are made by confession of judgment "*without action.*" In other words, under those statutory provisions judgments may be entered without *any* action being filed.

We have previously held in *Thoenes v. Tatro, supra,* that ORS 16.140 was not intended to define or limit the meaning of the term "voluntary appearance." We have also held in this case that ORS 15.030 was not intended to limit the means of acquiring personal jurisdiction to personal service and voluntary appearance. We also hold that ORS 26.110 and 26.120, which,

---

[4] ORS 26.010 provides:

"On the confession of the defendant, with the assent of the plaintiff or his attorney, a judgment or decree may be given against the defendant in any action or suit, before or after answer, for any amount not exceeding or relief different from that demanded in the complaint."

ORS 26.110 provides:

"On the confession of any person capable of being made a party defendant to an action at law, judgment may be given against such person, *without action,* in term time or vacation, in favor of any person for money due or to become due, or to secure any person against contingent liability on behalf of the defendant in such judgment, or both, if it be in favor of the same person." (Emphasis added)

ORS 26.120 provides:

"The confession shall be made, assented to and acknowledged, and judgment given in the same manner as a confession in an action pending; besides which, the confession shall be verified by the oath of the party making it, and shall authorize a judgment to be given for a particular sum. If it be for money due or to become due, it shall state plainly and concisely the facts out of which such indebtedness arose, and shall show that the sum confessed is justly due or to become due."

by their express terms, apply to confessions of judgment "without action," were not intended to exclude the acquisition of personal jurisdiction based upon agreements consenting to the submission to jurisdiction in *future* proceedings.[5]

■ The more difficult question is whether by the signing of the paternity agreement and stipulation in this case the defendant consented and submitted to the jurisdiction of the court in this proceeding. It is well established that consent to the submission to jurisdiction of a court in a future proceeding and waiver of constitutional rights to notice by personal service and an opportunity to be heard before entry of judgment may be either express or implied. *See Gilbert v. Burnstine, supra,* 174 NE at 708; *Aiutana Bankgenossenschaft v. Perren, supra,* 141 A2d at 258. *See also National Equipment Rental v. Szukhent,* 375 US 311, 316 (1964), and cases cited therein.

■ Defendant contends that there is no presumption in favor of jurisdiction and that the facts necessary to confer jurisdiction must affirmatively appear from the record, citing *In re Estate of Myers,* 197 Or 520, 530, 254 P2d 227 (1953). We hold, however, that such a requirement is satisfied if it appears from the record, including the paternity agreement and stipulation for entry of such an order, that defendant either expressly or impliedly consented to submit to the jurisdiction of the court to enter such an order.

■ In this case the defendant executed not only the "paternity agreement," including its express "acknowledgment of the paternity of said child" and its express agreement "to pay the sum of $50 per month for the support of said child," but also executed the

---

[5] We also note that it does not appear from the record that the trial court necessarily based the order denying defendant's motion upon the assumption that there had been a "confession of judgment" by defendant (as defendant contends on this appeal) rather than that by signing the paternity agreement and stipulation for entry of judgment the defendant agreed and consented to submit to the jurisdiction of the court in this proceeding.

stipulation entitled "IN THE CIRCUIT COURT OF THE STATE OF OREGON For the County of Douglas," in a proceeding naming "STATE OF OREGON, ex rel SHERIDEAN DEBORAH KARR," as plaintiff, and himself, as defendant, and expressly providing "that an order based upon an agreement attached hereto and made a part hereof be entered in this matter establishing paternity and allowing support for said children."

In *Gilbert v. Burnstine, supra,* 174 NE at 707, with reference to an agreement to arbitrate under the laws of another state, that court reasoned as follows:

"* * * Defendants' agreement without reservation to arbitrate in London according to the English statute necessarily implied a submission to the procedure whereby that law is there enforced. Otherwise the inference must be drawn that they never intended to abide by their pledge. They contracted that the machinery by which their arbitration might proceed would be foreign machinery operating from the foreign court. No other fair conclusion can be drawn from their language. * * *"

As in *Gilbert,* we hold that even though no legal proceedings had been filed at the time that defendant signed that paternity agreement and stipulation, the signing by defendant of those documents, including the provisions previously noted, if done "voluntarily, intelligently and knowingly" (as in *Overmyer*) "necessarily implied a submission" to the procedure under which the agreed upon order would be entered in that circuit court of this state, including a waiver of notice and an opportunity to be heard; that "no other fair conclusion can be drawn" from the language of the paternity agreement and stipulation, and that "otherwise the inference must be drawn that [defendant] never intended to abide by [that agreement and stipulation]." *Cf. Commonwealth v. Slossberg,* 208 Pa Super 419, 222 A2d 490 (1966).

The question remains whether, as required under the rule as stated in *Overmyer,* defendant signed the

[ 464 ]

paternity agreement and stipulation "voluntarily, intelligently and knowingly." The affidavits attached to defendant's "special appearance motion" asserted not only that he signed those documents before the complaint was filed in the paternity proceeding and that he had no notice or "opportunity to contest the paternity claim of Plaintiff," but that he had no opportunity "to admit or deny the genuineness of his purported signature on the various documents" and that he signed those documents under "threats and duress" in that he was told that if he did not do so he "would go to jail"; that signing the agreement was "the easiest way to go"; that "the welfare department simply wanted to get something on their records showing somebody as the father of the child," so that plaintiff could "get welfare assistance," and did not tell him that he "was signing away my right to contest her claim of paternity in the event that legal action were ever instituted by her" and that he then was unemployed and had no money or "means of representing myself in a court of law."

It appears from the trial court file, however, that a hearing was held before the circuit court on that motion by defendant, at which testimony was taken from defendant and from a state investigator before the court entered an order denying that motion. Defendant's notice of appeal from that order states that:

> "Defendant designates for inclusion in the record the trial court file. Defendant does not designate transcripts of hearings since Defendant does not appeal from the findings of facts relative to Defendant's claim of coercion and undue influence in this case."

On this state of the record, there is and can be no contention on this appeal that when defendant signed that paternity agreement and stipulation he did not do so "voluntarily, intelligently and knowingly."

We would add one further comment, in view of the possible constitutional problems mentioned in *Overmyer* and which may be implicit in the event that a

court should fail to provide an opportunity to a defendant to raise such an issue in a proceeding to set aside a judgment based upon an agreement to submit to the jurisdiction of a court to enter such a judgment.

■■ It is well established that the Oregon courts have inherent power to vacate judgments which are void for lack of personal jurisdiction over the defendant and that such a judgment is a denial of constitutional due process. *Wiles v. Wiles,* 211 Or 163, 169-70, 315 P2d 131 (1957). *See also Lothstein v. Fitzpatrick,* 171 Or 648, 658, 138 P2d 919 (1943), and cases cited therein, and Restatement of Judgments 72, § 12 (1942). The power to vacate such a judgment is not dependent upon statutory authority, such as ORS 18.160. *Fain v. Amend,* 164 Or 123, 131-32, 100 P2d 481 (1940). *See also* 1 Freeman on Judgments 447-51, § 228 (1925). This rule has been held to apply to judgments in cases in which jurisdiction is dependent upon either consent or notice to a nonconsenting party, as in adoption cases. *See Hughes v. Aetna Casualty Co.,* 234 Or 426, 441, 383 P2d 55 (1963); *In re Estate of Myers,* 197 Or 520, 533, 254 P2d 227 (1953); and *Furgeson v. Jones,* 17 Or 204, 220 (1888). *Cf. Miller v. Miller,* 228 Or 301, 365 P2d 86 (1961).

■■ It follows that in a paternity case in which jurisdiction over the defendant is based upon his execution of a paternity agreement and stipulation for entry of an order determining paternity and requiring support payments, as in this case, the defendant in such a case may subsequently institute a proceeding to vacate such a judgment upon the ground that such consent was not given "voluntarily, intelligently and knowingly." It also follows that in the event of such a proceeding, the issue whether such consent was given "voluntarily, intelligently and knowingly" is a question of fact and that upon the resolution of that issue in favor of such a defendant an Oregon court has a duty to vacate such a paternity order and has no

discretion to do otherwise. *See Peterson v. Hutton et al,* 132 Or 252, 255, 284 P 279 (1930).[6]

For these reasons, the decision of the Court of Appeals is reversed and the decision by the trial court is affirmed.

---

[6]It also follows that because such a judgment is void when entered, it cannot be subsequently validated by the making of payments as provided by such a judgment. *See Wiles v. Wiles,* 211 Or 163, 169-70, 315 P2d 131 (1957). Such payments may, however, be admissible as some evidence that when the paternity agreement and stipulation for entry of judgment was signed there was an intent to submit to the jurisdiction of the court; to waive constitutional rights to notice and hearing before the entry of the judgment, and to be bound by the judgment for support payments. *Cf. Commonwealth v. Slossberg,* 208 Pa Super 419, 222 A2d 490 (1966).